CAMPBELL, Judge.
Appellant, Bernard E. Dragland (Husband), challenges that portion of the Pinel-las County circuit court judgment that denied his petition to modify downward his permanent alimony obligations, set the alimony arrearages he owed appellee, Barbara E. Dragland (Wife), at $28,017 and reduced that amount to judgment. We affirm.
The June 12, 1985, final judgment of dissolution granted Wife $1,700 per month permanent alimony. Almost four years later, Husband filed a petition for modification, alleging that at the time of the dissolution, he had been an Eastern Airlines pilot, earning approximately $8,100 a month, but that, as a result of a strike, he was now unemployed and could not pay the $1,700 per month. Wife petitioned to reduce the arrearages to judgment.
The record reveals that in March of 1989, Husband became, in essence, unemployed due to his union’s strike activities with Eastern. From March 1989 through January 1990, he received strike benefits of $2,000 per month, but has had no income afterwards other than a three-week job with a computer company that terminated when the company was sold. Husband attempted to obtain employment in the airline industry with approximately fifty airlines, including domestic, European, Asian and Middle Eastern Lines. He was offered one position from Saudi Airlines which he did not take because of fear of personal injury and the fact that his gross would only be $25,000 a year.
At the time of dissolution in 1985, Wife was not working or able to work because *47 she was recovering from chemotherapy treatments for Hodgkin’s Disease. Due to Wife’s health problems, it was not expected that she would be able to obtain reemployment. She subsequently, through necessity and in an effort to obtain health related benefits, obtained part-time employment. She later, again because Husband gave her little or no assistance, went from part-time work to full-time work making $2,240 a month even though her health was still bad and she was advised she should not work.
Wife received her last $1,700 alimony check in February 1989. After that, Husband paid nothing until the court ordered him to pay $1,000 on October 1, 1989, and another $1,000 on November 1, 1989. On December 29, 1989, Husband paid $192. On February 1, 1990, Husband paid $195, and on March 5, 1990, Husband paid $195.
Husband has been able to provide for himself, however. The former marital home was sold for $192,500 on November 5, 1990. Husband sold the marital home to satisfy his creditors. Although Husband had continued to pay monthly expenses for the residence until then, he failed to pay Wife court-ordered alimony.
Husband has been living in the residential condominium of his now deceased mother. The condominium was quitclaim deeded to the parties’ two children as joint tenants, reserving a life estate for Husband. Husband also has a pension fund through Eastern which has been in effect for twenty-three years and which was not disposed of by the final judgment.
Wife has worked full-time only because Husband has willfully neglected to pay his alimony. Wife makes tri-yearly visits for follow-up care for Hodgkin’s Disease. She has had four surgeries for continuing foot deformities caused by Charcot-Marie-Tooth Disease, also known as Perineal Muscular Atrophy and Hereditary Motor and Sensory Neuropathy. During the past year, Wife needed four additional podiatric surgeries.
Husband took on an additional financial obligation when he was married in New Jersey on January 19, 1991, and, thus, worsened his financial situation.
It is clear that Husband has suffered a substantial change in circumstances which would normally mandate an adjustment in his monetary obligations due Wife. See Reep v. Reep, 565 So.2d 814 (Fla. 3d DCA 1990). However, it is also clear that the trial judge was concerned about Husband’s lack of any appreciable effort to satisfy any of his obligations even when he had at least some ability to do so. Husband’s conduct has been far less than exemplary in that regard and Wife’s medical problems and her needs continue unabated. Because of her precarious financial circumstances due to Husband’s refusal to attempt to comply with the previous support orders of the court, Wife has found it necessary to represent herself in this appeal and before the trial court. While the trial judge did not verbalize the doctrine of “clean hands” in his disposition of Husband’s petition to modify, it is clear to us that he was in fact applying that doctrine in denying Husband the relief he sought. Under the circumstances of this case, we cannot say that denial was an abuse of discretion. Williamson v. Williamson, 367 So.2d 1016, 1019 (Fla.1979); DePoorter v. DePoorter, 509 So.2d 1141, 1145 (Fla. 1st DCA 1987).
Affirmed without prejudice to Husband’s right to seek further relief when he has satisfied the “clean hands” problem.
RYDER, A.C.J., and FRANK, J., concur.