699 So.2d 280 (1997)
Hubert James ELLIS, Appellant,
v.
Barbara D. ELLIS, et al., Appellees.
No. 96-2624.
District Court of Appeal of Florida, Fifth District.
September 5, 1997.
*281 Paul Martz, St. Augustine, for Appellant.
Judith G. Shine of Miller, Shine & Bryan, P.A., St. Augustine, for Appellee.
PETERSON, Judge.
Hubert James Ellis appeals a final judgment of dissolution of marriage challenging: (1) the value placed upon the stock of a close corporation awarded to his former wife, Barbara D. Ellis, (2) the denial of alimony to him, (3) the award of permanent alimony to his former wife and (4) the denial of attorney's fees to him. We affirm.
At the time of the dissolution of this 39 year marriage, the former wife was 57 years old, a recent stroke victim, and suffered from an ulcer and hypertension. The former husband was 60 years old and suffered from manic depression. He served as a police officer from the beginning of the marriage until 1978, when he suffered a nervous breakdown. After two years of paid leave, he retired and the parties began living on his pension and social security disability income. In 1985, they moved from New York to St. Augustine, Florida, bringing with them $189,000 in liquid assets.
They decided to start a business in the latter part of 1986 and purchased two retail stores in the St. Augustine area for approximately $64,000. The stores, which almost exclusively sold souvenir T-shirts, have since been relocated numerous times and renamed. By the time the parties separated, the business had been incorporated in the former wife's name, and there were three retail outlets.[1] As business improved, the parties continued to invest more of the funds they had brought with them from New York. The former wife also believed that she invested $100,000 that she received from her aunt. As of December 31, 1994, the balance sheet of the couple's corporation, Barbara D. Ellis Enterprises, Inc., ("BDE") reflected that the combination of the book value of their equity and their loans to the corporation totaled over $260,000.
The trial court awarded to the husband assets valued at approximately $209,000, the majority of which consisted of a pension plan valued at $170,921. The former wife was given assets and responsibility for liabilities *282 resulting in a net distribution to her of approximately $198,000. The bulk of the wife's distribution consisted of the BDE stock which the trial court found to be worth $200,000, a value that was ascribed to it by the former wife's expert witness.

1. VALUATION OF THE BDE STOCK
The former husband challenges the value the trial court placed on the BDE stock in view of his expert's opinion that it was worth $702,000 on December 31, 1995. His expert relied primarily on the results of BDE's sales in 1995.
The former wife's expert valued the BDE stock at $200,000 as of the date of the filing of the petition for dissolution, April 27, 1995, the prescribed valuation date unless the trial court finds another date equitable and just under the circumstances. § 61.075(6), Fla. Stat. (1995). The former wife's expert, in preparing his appraisal of the stock, concentrated on the overall performance of the business in the three years prior to the filing of the petition for dissolution, fiscal years 1992, 1993 and 1994. He also examined the company's statements for the fiscal year 1995 but concluded that for purposes of valuation analysis, the 1994 year end reports would be a better indication of value in that their cut off dateDecember 31, 1994was closer to the date of the filing of the petition for dissolution, April 27, 1995, than the year end reports for 1995. Due to BDE's history of losses and marginal profitability, the former wife's expert relied primarily on a liquidation approach to value the stock, rather than a going concern approach. He concluded that if the assets of BDE were liquidated in two months the company would have a liquidation value of $155,000. He then placed an 85% weight factor on the liquidation value of $155,000 and a 15% weight factor on a "sales approach" value of $425,000 to arrive at an estimated fair market value of $200,000.
Although there is a large disparity between the two valuations, there exists competent, substantial evidence to support the trial court's selection of the value assigned to the BDE stock by the former wife's expert.[2] Comparatively, the valuation by the former husband's expert focused almost exclusively on the year 1995 and largely ignored the historical performance of the operations. It also appeared to be based on an unproven assumption that the parties had materially misstated their taxable income for several years, whereas the former wife's expert reasonably recognized the volatile historical earnings pattern of the business as negatively impacting its sale value. He also recognized as a negative factor the strong possibility of liquidation, and the practical difficulty of attracting a buyer who would pay a premium for the goodwill of BDE, a corporation that essentially engages in t-shirt sales, where "the threat of new competition is ... high since the barriers to entry for this type of business are relatively low." We will not disturb the trial court's determination of the value of BDE.

2. FORMER HUSBAND'S REQUEST FOR ALIMONY
The former husband argues that he is entitled to alimony because his former wife had taxable income on her 1995 return of $65,000, while he only received benefits totaling approximately $30,000. His argument ignores the uncertainties inherent in the continued success of BDE, particularly given its historical performance. Furthermore, during the pendency of this divorce, one of the parties' six children, one who had played an important role in BDE's management, opened his own store in the same location where the former wife had been forced to close a third store. The closing of the store, the son's decision to compete with his mother and the former wife's health contribute to the uncertainty of the continued success of BDE. We note further that the former husband has a pension worth $170,900, and in addition *283 collects social security disability benefits of over $1,200 per month. We believe that the trial court reasonably denied the former husband's request for alimony because he has failed to show either that he needs it or that the former wife has the ability to pay it. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).

3. AWARD OF PERMANENT ALIMONY TO FORMER WIFE
In Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986), the Florida Supreme Court observed that vested matured retirement benefits are marital benefits subject to equitable distribution. These benefits may be considered as a source of permanent periodic alimony but if they are, they should not also be considered to be a distribution of property. The court noted by way of example that if a wife "received through equitable distribution or lump sum alimony one-half of the husband's retirement pension, her interest in his pension should not be considered as an asset reflecting his ability to pay." Diffenderfer at 267. In this case, the trial court's award to the former wife of $1 per year permanent alimony leaves open the possibility of increasing her alimony should BDE's profitability decline. The former husband fears that any increase will impact his equitable distribution. The concern is unfounded, however, since he also collects over $1,200 per month in social security disability income. There was no Diffenderfer error in granting alimony to the former wife because the former husband's social security disability income is potentially available for payment of this alimony. Pilny v. Pilny, 658 So.2d 1110 (Fla. 5th DCA 1995) (disability benefits may be viewed as source of alimony). Although we affirm the nominal award of alimony, we note that any future increase of that award should be made without reference to the former husband's pension. The pension was awarded to the former husband as part of his equitable distribution and therefore cannot be looked upon as a source of alimony. Diffenderfer.

4. ATTORNEY'S FEES FOR FORMER HUSBAND
The former husband received slightly more than 50% of the couple's marital assets and enjoys an income stream comparable to that of his former wife. McIntyre v. McIntyre, 434 So.2d 61 (Fla. 5th DCA 1983) (inequitable to diminish assets equitably distributed by requiring one party to pay other's costs where each party has a substantially equal ability to pay their own.) The former husband has not shown the trial court abused its discretion in denying his request for an award of attorney's fees.

SUMMARY
We affirm the final judgment of dissolution with the caveat that the former husband's police pension cannot be viewed as a source of any future increase in alimony.
AFFIRMED.
ORFINGER, R., Associate Judge, concurs.
HARRIS, J., dissents with opinion.
HARRIS, Judge, dissenting.
I respectfully dissent.
The bad conduct of either party to a marriage, whether it is abuse or adultery, simply cannot be banked for twenty-five years and then withdrawn and applied toward a greater award of alimony or distribution of marital assets than would otherwise be justified. In my view, that is what happened here. It is uncontested that the husband was physically abusive during the first fifteen years of this forty-year marriage. It is equally uncontested that he has not been physically abusive during the last twenty-five years. To recognize an ancient wrong as an element of alimony or distribution of marital assets is not only bad law but also bad domestic policy. Parties to a marriage can never truly reconcile if forgiveness is temporary or conditional. Since the fact that the marriage was irretrievably broken was not contested and custody was not an issue, the husband's ancient wrong should not have become a focal point of the dissolution hearing. The fact that testimony about the ancient wrong may have prejudiced the husband in his claims *284 before the court is so great a possibility that we should not sustain this judgment.
Criminal laws are designed for punishment. Criminal contempt may serve the same purpose. But alimony and the division of marital property are not designed for retribution. Alimony is to meet the financial needs of one spouse based on the financial ability of the other. A division of marital property is to recognize the contribution that each spouse in his or her separate ways has contributed to the acquisition of assets. Bad conduct, unless it affects the earning ability or the needs of the wronged party, or has diminished the marital estate, should be irrelevant to the issue of alimony or the division of marital property.
A substantial portion of the first three pages of the Final Judgment itemizes the incidents of the husband's abuse some twenty-five years earlier. The trial court then observed that the wife "stuck by the husband throughout this ordeal." The husband's ancient wrongs are as irrelevant now as they were reprehensible then. The parties reconciled, got on with their marriage, and coexisted for twenty-five years thereafter without violence. The court's inordinate interest in the wrongs committed during the first fifteen years of this marriage raises too great a risk that the husband's property rights were prejudiced.
Aside from the ancient wrongs, what are the facts of this case? We have a long term marriageover forty years. We have a sixty-year old husband who is disabled because he suffers from manic-depression and is unable to work. The husband's income is less than $30,000 per year and results from his pension as a retired police officer and from disability payments because of his mental illness. We have a fifty-seven year old wife who, although she suffers from an ulcer and hypertension, has demonstrated an ability to work in the family business considerably in excess of forty hours a week and to earn from such employment a salary considerably in excess of the husband's income. The wife acknowledges receiving $35,000 in salary in addition to being furnished a vehicle with expenses. It also appears that the subchapter s corporation by which she is employed pays her income tax and generates enough extra revenue to substantially reduce the debts of the business, which is now owned solely by the wife. If an employer pays off obligations for the benefit of an employee, or pays for purchases that are for the benefit of the employee, has not additional salary been paid? Is that somehow changed because a subchapter s corporation is involved?
In any event, this unemployable and unemployed husband whose income is substantially less than his employable and employed wife receives no alimony but instead is required to stand ready to pay alimony if the wife proves unable to continue to earn sufficient salary from the family business awarded to her. The husband might wonder whether the result would have been the same if the genders were reversed. Suppose, for example, it was an elder wife who received the pension and disability payments of somewhat less than $30,000 a year, and a younger husband who received the family business returning an income substantially in excess of that amount. Would the husband of some 40 years have avoided alimony? Would the disabled wife be required to stand as insurer that the husband would continue to earn sufficient income from the business? Rey v. Rey, 598 So.2d 141 (Fla. 5th DCA 1992), might be instructive.
No one recognizes more than I that there is no such doctrine as the doctrine of comparable fairness. The doctrine was first "floated" by the plurality opinion in Kennedy v. Kennedy, 622 So.2d 1033 (Fla. 5th DCA 1993). It was immediately sunk in Kennedy v. Kennedy, 641 So.2d 408 (Fla.1994), in a most summary and unique fashionsummary because no reason was given and unique because even though the supreme court lacked jurisdiction, it nevertheless declared the doctrine DOA. In any event, there must be somewhere in the Constitution, perhaps in the "penumbra" of the specific rights granted therein, perhaps even in the specific right granted in Article I, Section 2 of the Florida Constitution ("[a]ll natural persons are equal before the law ...") some right of fairness. Even though Canakaris has become *285 Kafka's doorkeeper[1] in so far as a review of fairness is concerned, still we can consider whether the trial court relied on the correct principles of law. Rewarding a wife who "stuck by her man" is not such a principle.
And now let's look at the distribution of marital assets. Unquestionably these businesses (two businesses operated under a single corporation) were formed by using the savings of the parties when they moved to Florida. The businesses are successful and generate substantial income and are the principle asset of the marriage. Even so, there are mystic qualities in both the wife's and husband's appraisals of the businesses. The value ranged from the wife's appraisal of $200,000 (even though the balance sheet showed the couple has invested $260,000 into this business which showed an income to the wife of $65,624 in 1995) to the husband's appraisal of $700,000. Indeed, when two CPA's, supposedly bound by the same protocol, reach such divergent opinions on the value of a relatively simple business operation, one's confidence in the value of CPA appraisals of business is undermined. The court accepted the wife's appraisal. This would normally be within the court's province; however, in this case, one cannot tell whether the acceptance was based on the appraisal's merits or was accepted in order to reward the wife and punish the husband because of the ancient wrongs.
There is a further concern caused by the court's statement in the Final Judgment criticizing the husband's appraiser for basing his appraisal on the year 1995 because during 1995 "there was no participation at all in the Corporation by the Husband. The year chosen by the Wife's expert for his valuation, 1994, is clearly more appropriate in that the parties' physically separated in August, 1994, and the husband participated in the operation of the Corporation through November, 1994." This indicates that the court was of the opinion that one is entitled to participate in the enhanced value of marital property only to the extent that he or she physically contributed to its operation or acquisition. The dissolution action was not filed until April 28, 1995 and the Final Judgment was not entered until August 21, 1996. Although the trial court, using reasonable discretion, may determine a date for evaluating marital assets, the participation or lack thereof in the active management or acquisition of a marital asset does not seem relevant in determining that date. In fact, the wife, according to the Final Judgment, contributed little active participation in the business until 1995.
If the court is truly concerned about the continued viability of the business and the future economic well-being of the wife, the better solution (even a fair one) would be to divide the pension benefits between the parties and leave them as equal owners of the business. This would make the whimsical values placed on the business irrelevant. The court could then award to the wife the right (and impose upon her the obligation) to manage the business because of the husband's disability. Any salary received by the wife would, of course, be subject to an alimony claim by the husband. If money is retained in the business or if business obligations are satisfied, then the interest of both parties in the business is enhanced equally. If the wife becomes incapable of managing the business, then dissolution of the corporation and a division of its assets would remain an option.
NOTES
[1] At the time of the trial, however, only two stores remained because the former wife was unable to manage all three locations.
[2] The dissent would have us reverse the trial court's determination on this matter because one cannot tell if the court's selection of the former wife's expert's valuation was based on the merits or based on a desire to punish the former husband for his past wrongs. We choose not to go down this path. As stated in Herzog v. Herzog, 346 So.2d 56, 58 (Fla.1977), "Even if the appellate court disagrees with the trial court and would have reached a different conclusion had it been in the shoes of the trial court, barring a lack of substantial evidentiary support for the findings of the trial court, the judgment should be affirmed."
[1] FRANZ KAFKA, "Before the Law," from THE TRIAL, DEFINITIVE EDITION (Willa Muir and Edwin Muir trans., Alfred A. Knopf 1984).