746 So.2d 1176 (1999)
Mary F. ROGERS, Appellant,
v.
Jerome R. ROGERS, Appellee.
No. 99-00294.
District Court of Appeal of Florida, Second District.
December 8, 1999.
*1177 Thomas H. McGowan of Rahdert, Anderson, McGowan & Steele, P.A., St. Petersburg, for Appellant.
Nicholas L. Ottaviano, Clearwater, for Appellee.
ALTENBERND, Judge.
Mary F. Rogers ("former wife") appeals an order terminating the obligation of Jerome R. Rogers ("former husband") to pay her permanent periodic alimony. We reverse because the law places a significant burden on the former husband to justify a voluntary retirement at age 56, especially when that retirement will leave the former wife destitute. Mr. Rogers failed to present evidence satisfying this significant burden. See Pimm v. Pimm, 601 So.2d 534 (Fla.1992).
The parties were divorced in 1992 after 33 years of marriage. At the time of the final hearing, the former husband was employed with Honeywell, Inc., earning a net income of approximately $2300 per month. The former husband had accrued significant retirement benefits through this employment during the marriage, but was not eligible to receive those benefits until at least age 55. The former wife had not been employed during the marriage except for brief periods. In the original final judgment of dissolution, the trial court ordered the sale of the marital home and an equal division of the former husband's future retirement benefits. The trial court also ordered the former husband to pay permanent periodic alimony to the former wife in the amount of $625 per month, commencing after the sale of the home.
On appeal, this court reversed the final judgment, holding that the trial court should have granted the former wife's request to award her the home in lieu of any interest in the future retirement benefits. See Rogers v. Rogers, 622 So.2d 96 (Fla. 2d DCA 1993) (Rogers I). We reasoned that it was unfair to condition the former wife's interest in the former husband's pension upon the former husband's survival until retirement age. We directed the trial court to award the former wife the marital home, which had not yet been sold, and to award the former husband his retirement benefits. We noted in our opinion:
Having awarded Mrs. Rogers the husband's interest in the marital home as a lump sum distribution of the pension benefits, we note that injustice would result if the same asset was used to calculate both a property distribution and a party's support obligation. Because one-half of Mr. Rogers' pension will be distributed as marital property, the wife's percentage of the pension may not be considered as a source of payment of alimony after the husband retires and begins collecting his benefits. Diffenderfer, 491 So.2d at 267.
Rogers, 622 So.2d at 99. We also required a re-evaluation of the amount of permanent *1178 periodic alimony on remand. Upon reconsideration of the alimony, the trial court entered an order on December 15, 1993, requiring the former husband pay permanent alimony of $900 per month based upon the income he received from his employment.
In February 1996, after attaining thirty years of employment with Honeywell, the former husband retired at age 56. The former husband incorrectly interpreted our opinion as automatically terminating his alimony obligation immediately upon his retirement. When he discovered his error, he filed a supplemental petition for modification of alimony on February 26, 1996. However, he did not set the cause for trial until the former wife obtained a qualified domestic relations order enforcing the unpaid alimony obligation that accrued after the filing of his supplemental petition.
A final hearing was held October 7, 1998. It is helpful to consider the former husband's burden at that hearing as stated by the supreme court in Pimm:
In determining whether a voluntary retirement is reasonable, the court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire. The age of sixty-five years has become the traditional and presumptive age of retirement for American workers.... Based upon this widespread acceptance of sixty-five as the normal retirement age, we find that one would have a significant burden to show that a voluntary retirement before the age of sixty-five is reasonable. Even at the age of sixty-five or later, a payor spouse should not be permitted to unilaterally choose voluntary retirement if this choice places the receiving spouse in peril of poverty. Thus, the court should consider the needs of the receiving spouse and the impact a termination or reduction of alimony would have on him or her. In assessing those needs, the court should consider any assets which the receiving spouse has accumulated or received since the final judgment as well as any income generated by those assets.
Pimm, 601 So.2d at 537.
At the hearing, the former husband presented the testimony of a psychiatrist he had seen on one occasion in February 1998. Based on that one consultation, the psychiatrist diagnosed a major depressive reaction and concluded the former husband could not perform a job similar to his position at Honeywell. The psychiatrist had prescribed Zoloft for the depression, but testified the depression was "most likely" going to persist despite treatment. The psychiatrist admitted that he had no knowledge, other than the former husband's statements, of the former husband's medical condition in 1996 when he retired, nor had the psychiatrist performed any follow-up treatment in the eight months since his only contact with the former husband.
The former husband had various reasons for retiring. He testified that he retired because he had reached thirty years of service, apparently the years of service he needed to retire and receive these benefits. Before he retired, his job at Honeywell had become increasingly menial, but his salary and benefits had remained unchanged. He testified that he had some health problems at the time of his retirement, but offered no medical evidence to support his self-serving testimony. There was no evidence that these health problems were debilitating or continuing in nature. The most serious health problem was an incidence of kidney cancer that had been treated by surgery while he was still employed. He received a paid leave of absence for his recovery and the cancer had not recurred.
On cross-examination, the former husband was asked to explain once again why he had retired, and in response he explained:

*1179 I just couldn't understand how, you know, you work 50 years and the Government you serve takes your house away from you, and the wife you serve for 20 years-I was married for 19 years before we got the legal separation, you serve somebody all this time and they conspire to take all your stuff away.
It's unfair, patently unfair to lose everything you work for your whole life, you know. You just cannot function after this happens to you.
The former husband admitted that once the qualified domestic relations order was entered enforcing the alimony obligation, the lack of employment income was financially devastating to him. He was left with only $700 per month on which to live and had accordingly liquidated his assets to make ends meet. He was living with friends because he could not afford to rent an apartment. He did not seek any other employment and claimed he was unable to work.
Ms. Rogers, nearing age 60, was working cleaning homes. Her monthly wages were approximately $600. That income combined with the alimony was sufficient to cover only her essential living expenses. Thus, by seeking a termination of alimony, the former husband requested relief which would reduce his former wife's income to $600-less than the income on which he himself found it impossible to live. The former wife's only significant assets were the modest former marital home and a one-fifth interest in some family property.
The trial court found that Mr. Rogers' retirement was reasonable, and because Mr. Rogers' sole source of income was his pension, the trial court terminated the obligation for alimony.[1]
Mr. Rogers' age and health at the time of his retirement did not justify his decision to retire. The limited testimony provided by the psychiatrist did not establish that this retirement was involuntary or necessitated by any psychiatric disorder. The former husband's own testimony establishes a dubious motivation for retirement. See Dragland v. Dragland, 584 So.2d 46 (Fla. 2d DCA 1991). Clearly, the effects of his retirement are financially devastating to both parties.
We conclude that the evidence presented by the former husband was insufficient to establish that his early retirement was reasonable under these circumstances given the significant burden required by Pimm. Even if this decision is discretionary, the trial court abused its discretion in so ruling. Cf. Townsend v. Townsend, 585 So.2d 468 (Fla. 2d DCA 1991) (holding proof of permanent, unanticipated, substantial change of circumstances a prerequisite to trial court's authority to exercise discretion in modification proceeding). As such, the former husband was not entitled to a termination of his support obligation and his petition should have been denied.
Practically speaking, the former husband's imprudent decision to retire prematurely presents a situation that cannot be remedied easily unless he is able to find a comparable job for at least a few years. If he cannot obtain such a job, the trial court does have authority to reach the pension benefits to pay a support arrearage.
In Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986), the supreme court held that a pension could be treated as an asset for equitable distribution or as income available to determine a spouse's ability to pay alimony, but not both. This court reiterated that principle in Rogers I. In doing so, we stated, "the wife's percentage of the pension may not be considered as a source of payment of alimony after *1180 the husband retires...." Rogers, 622 So.2d at 99 (emphasis added). Both of these cases, however, involved an original dissolution action wherein alimony was calculated. In this case, when the matter was previously remanded to the trial court, it did set alimony without considering the pension as a source of payment. The amount was set based exclusively upon the salary that Mr. Rogers was earning at the job from which he later prematurely retired.
Because Mr. Rogers has voluntarily divested himself of any income and all assets with which he could otherwise pay his alimony obligation and now has a sizable arrearage, his circumstances fall within the general rule that a trial court can look to all assets of a party in determining whether the party has the ability to pay a purge amount in a contempt proceeding. See Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985). Although Mr. Rogers may shield his retirement benefits as a source of payment of current alimony, he cannot shield these payments concerning the arrearage. The pension income may thus be considered income available for enforcement of the alimony, should no other source be found.[2]
We therefore reverse the final judgment terminating the alimony and remand for entry of a final judgment denying the supplemental petition to modify.
Reversed and remanded.
PARKER, A.C.J., and NORTHCUTT, J., Concur.
NOTES
[1] Even if a reduction in alimony is justified by the evidence in this type of case, we are inclined to believe that alimony should be modified to $1 per month rather than terminated so that it could be reinstated in the future upon some substantial, unexpected change in circumstances. See Ellis v. Ellis, 699 So.2d 280 (Fla. 5th DCA 1997); Davis v. Davis, 691 So.2d 626 (Fla. 5th DCA 1997).
[2] We note that the former husband may be able to prove he is not able to pay the full amount of the obligation if this is his only source of income and he is unable to obtain any alternate employment.