757 So.2d 523 (2000)
Michael J. LAURO, Appellant/Cross-Appellee,
v.
Judith K. LAURO, Appellee/Cross-Appellant.
No. 4D98-4006.
District Court of Appeal of Florida, Fourth District.
March 22, 2000.
Rehearing Denied May 10, 2000.
James M. Tuthill of the Law Offices of James M. Tuthill, West Palm Beach, for appellant/cross-appellee.
Denise S. Calegan of Rutherford, Mulhall & Wargo, Boca Raton, for appellee/cross-appellant.
KLEIN, J.
The husband appeals a judgment dissolving his marriage and raises four issues: (1) whether the income the wife was receiving from one-half of his pension equitably distributed to her should have been considered in determining alimony; (2) whether per diem pay from his employer should have been included in computing his earnings for purposes of child support; (3) whether the court should have based *524 his earnings on his 1997 income, which included a much higher than normal bonus; and (4) whether the court erred in requiring him to pay one-half of the wife's attorney's fees and costs. We reverse.
The parties were married in 1967 and have two children ages fifteen and thirteen. The husband was a career Air Force officer and retired in 1991 with a pension. In 1992 he began work as a commercial pilot earning between $52,000 and $76,000 a year during the four years prior to the dissolution.
The husband's Air Force pension was paying $25,692 a year at the time the marriage was dissolved, and the trial court found that his pension constituted a marital asset, equitably distributing one-half to the wife. The judgment also ordered the husband to obtain a "survivor benefit plan" for the wife.
As a result of the equitable distribution of the pension, the wife would be immediately receiving $1,079 a month income from the pension. The trial court refused to consider this amount when it determined that the husband would pay the wife $1,850 a month in permanent periodic alimony, citing Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986). We conclude that the trial court misinterpreted Diffenderfer, and that it should have considered the pension income as income to her when it determined permanent alimony.
In Diffenderfer the fifty-four year old husband was an engineer employed by the federal government which provided retirement benefits. He was not receiving benefits, as he was still working, but evidence was introduced showing that the present value of his future retirement benefits was $297,000. The husband had contributed $44,000 to the retirement plan during the marriage.
The trial court in Diffenderfer concluded that only the $44,000 contribution should be considered a marital asset. The wife argued on appeal that the entire plan should have been treated as a marital asset, and the first district certified the issue to the Florida Supreme Court as one of great public importance. Citing cases from other jurisdictions, the Florida Supreme Court concluded that the present value of the pension plan was a marital asset. The supreme court also held that retirement benefits can be considered in determining the ability to pay permanent periodic alimony, but went on to state:
Obviously, however, injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations. If the wife, for example, has received through equitable distribution or lump sum alimony one-half of the husband's retirement pension, her interest in his pension should not be considered as an asset reflecting his ability to pay.
Diffenderfer, 491 So.2d at 267.
The trial court in this case apparently construed the first sentence in the above quote as meaning that the trial court could not consider the income the wife would be receiving from the pension in determining her need for alimony. What the supreme court meant, however, is explained by the next sentence, which is that the one-half of the husband's pension distributed to the wife could not be "considered as an asset reflecting his ability to pay." In other words, the ability of the husband in Diffenderfer to pay alimony should be based on his financial situation after equitable distribution, not before. Similarly, the needs of the wife in this case should be based on her financial situation after equitable distribution, not before. That would include her income from the pension.
Section 61.08(2)(d), Florida Statutes (1997) requires trial courts to consider, when fashioning awards of alimony, "all relevant economic factors, including but not limited to: ... the financial resources of each party, the non-marital and the marital assets and liabilities distributed to each." Section 61.08(2)(g) requires the court to consider "all sources of income *525 available to either party." The trial court's interpretation of Diffenderfer would be directly contrary to those statutory provisions.
In McLean v. McLean, 652 So.2d 1178, 1181 (Fla. 2d DCA 1995), the second district observed:
When a party receives an asset in equitable distribution that will result in immediate investment income, we see no reason for that income to be excluded from consideration under section 61.08(2)(g).
The income from the pension equitably distributed to the wife here is no different than income produced by any other asset equitably distributed to a spouse. It must, under section 61.08, be considered in determining alimony, just as it is in determining child support. Cummings v. Cummings, 719 So.2d. 948 (Fla. 4th DCA 1998)(income from assets acquired in equitable distribution would be included in calculating wife's income for purposes of child support).
In Rogers v. Rogers, 622 So.2d 96 (Fla. 2d DCA 1993) there were two marital assets, the home and the husband's pension. The trial court required the home to be sold with the proceeds divided, and awarded the wife one-half of the husband's interest in the pension which was not paying any benefits as the husband was still working. The second district concluded that this division was error because it was unclear how the wife would ever receive pension benefits. It held that the wife should have been given the husband's interest in the home as she requested, and the husband given the wife's interest in the pension. It then stated: "Because one-half of Mr. Rogers's pension will be distributed as marital property, the wife's percentage of the pension may not be considered as a source of payment of alimony after the husband retires and begins collecting his benefits." We are not sure that the above quote, which cited Diffenderfer, is a correct interpretation of Diffenderfer. It is arguably contrary to sections 61.08(2)(d) and 61.08(2)(g), Florida Statutes.[1]
We hold that where a pension is currently generating income, that income must be considered in assessing the need for and the ability to pay alimony. We remind trial courts, however, that in Diffenderfer our supreme court emphasized that it was not "establishing inflexible rules that make the achievement of equity between the parties difficult, if not impossible." Diffenderfer, 491 So.2d at 269. It also pointed out that section 61.08(2)(g) provides that, in awarding alimony, courts, "may consider any other factor necessary to do equity and justice between the parties."[2]
The husband next argues that the trial court erred in including the approximately $6,000 he receives annually in per diem pay when calculating his income. The per diem pay compensates the husband for expenses incurred when he is away from home, including food, telephone and laundry.
Section 61.30(2)(a)(13) provides that "reimbursed expenses or in-kind payments to the extent that they reduce living expenses" shall be used in determining child support. The husband testified that the per diem he received was insufficient to cover his actual expenses of over $10,000 he incurred when he was away from home on business. The wife presented no evidence to contradict this testimony, and *526 there is accordingly no evidence from which the court could have found that the per diem reduced his "living expenses" as is required by the statute.[3]
The wife argues in her brief that if the husband is paid per diem to cover his meals away from home, he does not have to buy groceries for dinner at home. We reject her argument for two reasons. First, per diem is a flat rate per day which does not necessarily cover the actual expenses incurred by the husband. His testimony confirmed that. Second, even if the husband were reimbursed for the exact amount he spent on a meal away from home, the reduction in his living expenses at home because he did not have to buy groceries is de minimus. Trial judges should not be reduced to having to decide how much a spouse, who was reimbursed for a meal while traveling, would have spent on a can of soup or a frozen dinner eaten at home.
The husband next argues that the trial court erred in basing his ability to pay alimony and child support on his 1997 income which, without the per diem pay, was $76,000. His income including bonuses in 1996 was $60,000, in 1995, $66,000, and in 1994, $52,000. He testified that he had worked more in 1997 in order to avoid being at home because of marital problems and earned overtime which would not be available in the future because the employer had hired additional pilots.
Section 61.30(2) requires the inclusion of bonuses in a spouse's income for purposes of child support, and section 61.08(2)(g) requires consideration of all sources of income in computing alimony. And, in Shrove v. Shrove, 724 So.2d 679 (Fla. 4th DCA 1999) we held that the husband's "regular and continuous" bonus income was properly included in calculating income. In the present case, however, there was no evidence that the husband's income in 1997, which was substantially greater than his average income for the preceding three years, would continue. When the trial court considers this on remand, it should have the benefit of the husband's income for 1998 and 1999 which will enable the court to make a more informed calculation.
The husband also argues that the court erred in requiring him to pay one-half of his wife's attorney's and accountant's fees because, after equitable distribution, the parties were left with equal assets, and the wife's income including alimony was actually greater than the husband's. If we were affirming the issues addressed above, we would agree with the husband. We therefore reverse the award at this point for the trial judge to reconsider these fees after alimony and child support are redetermined.
WARNER, C.J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] The second district found itself in a dilemma, as a result of that statement, when Mr. Rogers took early retirement. It resolved that dilemma by holding that his entire pension could be a source for paying arrearages in alimony, notwithstanding what it said in Rogers I. Rogers v. Rogers, 746 So.2d 1176 (Fla. 2d DCA 1999).
[2] We noted earlier that the final judgment ordered the husband to obtain the "survivor benefit plan" in regard to the pension for the wife. The record is unclear as to what that benefit will do for the wife. These types of contingencies regarding pensions are one reason why trial courts must have the flexibility to "do equity." Id. at 269.
[3] The guidelines allow a deduction from gross income for income tax deductions. § 61.30(3)(a). If husband in this case were deducting his actual expenses incurred away from home from his gross income under the guidelines, then his per diem (or reimbursement) would be includable as gross income. We cannot determine from this record that he did.