821 So.2d 1088 (2002)
Charles Frederick ACKER, Appellant,
v.
Barbara Drumm ACKER, Appellee.
No. 3D00-3096.
District Court of Appeal of Florida, Third District.
May 22, 2002.
Rehearing Denied July 31, 2002.
*1089 Russo & Kavulich and Jerome J. Kavulich, for appellant.
Nancy A. Hass, Hallandale, for appellee.
Shannon McLin Carlyle, Leesburg; John G. Crabtree, Key Biscayne; Miller, Schwartz and Miller, Hollywood, for the Family Law Section of The Florida Bar as amicus curiae.
Before SCHWARTZ, C.J., and JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO and RAMIREZ, JJ.

On Rehearing En Banc
COPE, J.
The former husband was granted his pension plan as part of his equitable distribution at the time of the parties' divorce. Subsequently the former husband retired.
The question before us is whether the pension benefits equitably distributed to the husband may be considered in determining the former husband's ability to pay alimony.[1] We conclude that the answer is yes. This follows from the Florida Supreme Court opinion in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986).
More important, this issue is now controlled by later-enacted legislation. Under the applicable Florida Statutes, the pension benefits equitably distributed to the former husband may be considered in determining his ability to pay alimony.

I.
The parties divorced in 1993 after a twenty-three-year marriage. The husband was fifty-three. He was a pilot for Delta Airlines earning approximately $160,000 per year. The wife earned approximately $10,000 per year from employment.
The parties entered into a marital settlement agreement under which the husband was granted, as part of his equitable distribution, his pension benefits. The wife was granted the marital residence and other assets.
The marital settlement agreement provided for the wife to receive $3,000 per month in permanent alimony. After three years, the alimony award would be subject to modification. The agreement provided that when the husband retired from Delta, the parties would "revisit the matter of the amount of any alimony that he pays, thereafter."[2] (R. 11).
In 1996, Delta offered an early retirement option which the former husband accepted. He received a lump sum payment of approximately $1 million, plus $7,803 per month, or approximately $93,636 per year.
The former husband moved for termination of his alimony obligation. He argued that, as a matter of law, it is impermissible to consider his pension benefit as a source of funds with which to pay his alimony obligation, because the pension benefit had been received as equitable distribution at the time of the divorce. He contended that this follows from the Florida Supreme Court's decision in Diffenderfer and certain post-Diffenderfer cases. The trial court denied the motion to terminate *1090 alimony, and the husband has appealed.[3]
A panel of this court heard oral argument of the appeal. The panel then referred the case to the court for en banc consideration. The en banc court directed the parties to address, among other things, whether the court should recede in whole or in part from two cases which interpret Diffenderfer: Hollinger v. Baur, 719 So.2d 954 (Fla. 3d DCA 1998), and Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA 1988).

II.
We first consider how the issue should be analyzed under Diffenderfer. As will be explained below, some of the difficulty in analyzing the issue stems from the fact that there was a typographical error in the Westlaw and CD-Rom versions of the Diffenderfer decision.
In Diffenderfer the Florida Supreme Court held "that a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property." 491 So.2d at 270. The court also said that "such benefits may be considered as a source of payment of permanent periodic alimony." Id. at 267. The court then said:
Obviously, however, injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations. If the wife, for example, has received through equitable distribution or lump sum alimony one-half of the husband's retirement pension, her interest in his pension should not be considered as an asset reflecting his ability to pay.
Id. (emphasis added). The court was making the obvious point that if one-half of the husband's pension is given to the wife, that half is no longer available to the husband in calculating the husband's ability to pay alimony. Indeed, the half which has been transferred to the wife would reduce the wife's need for alimony at such time as the parties were able to draw on the pension benefits.[4]
It appears that when the Diffenderfer decision was entered into the Westlaw database, and was also published in CD-Rom format, there was a typographical error. In the Westlaw/CD-Rom versions, the phrase "her interest in his pension" became "his interest in his pension." This error, of course, changed the meaning.
The erroneous version read as follows:
Obviously, however, injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations. If the wife, for example, has received through equitable distribution or lump sum alimony one-half of the husband's retirement pension, his interest in his pension should not be considered as an asset reflecting his ability to pay.
Diffenderfer, 491 So.2d at 267 (emphasis added) (quoted in Schlafke v. Schlafke, 755 So.2d 706, 707 (Fla. 4th DCA 1999)).
Under the erroneous Westlaw/CD-Rom version of Diffenderfer, the meaning has changed completely. Under the erroneous version, if the pension is divided one-half *1091 to the wife and one-half to the husband, the half received by the husband cannot be considered as an asset reflecting the husband's ability to pay alimony.
It thus appears that since 1986, there have been two versions of Diffenderfer existing side by side.[5] Under the published version (which is authoritative), the half of the pension benefit received by the husband in the court's example can be considered in determining the husband's ability to pay alimony. Under the electronic/CD-Rom (erroneous) version, the half of the pension benefit received by the husband cannot be considered in determining the husband's ability to pay alimony.
In the years since Diffenderfer, this court and others have issued opinions interpreting Diffenderfer to say "that a pension could be treated as an asset for equitable distribution or as income available to determine a spouse's ability to pay alimony, but not both." Rogers v. Rogers, 746 So.2d 1176, 1179 (Fla. 2d DCA 1999); Hollinger v. Baur, 719 So.2d 954 (Fla. 3d DCA 1998); Paris v. Paris, 707 So.2d 889, 890 (Fla. 5th DCA 1998); Ellis v. Ellis, 699 So.2d 280, 283 (Fla. 5th DCA 1997); Bain v. Bain, 687 So.2d 79, 81 (Fla. 5th DCA 1997); Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990); Waldman v. Waldman, 520 So.2d at 90. We surmise that this line of cases evolved from the erroneous Westlaw/CD-Rom version of Diffenderfer.[6]
In any event, we conclude that the authoritative version of Diffenderfer is the decision published in the bound volume of the Southern Reporter, Second Series. Based on the plain words of the published opinion, a court is allowed to consider a pension which has been equitably distributed to the payor in determining the payor's ability to pay alimony. We therefore find it necessary to recede from Hollinger v. Baur, and to recede from the discussion of Diffenderfer contained in Waldman v. Waldman.[7]

III.
The foregoing discussion of Diffenderfer has become academic, because in 1988 (two years after the Diffenderfer decision), the legislature enacted statutes which are now controlling on this exact issue. Ch. 88-98, Laws of Fla. In so doing, the legislature created the equitable distribution statute, and also amended the statute governing alimony.
The current version of the equitable distribution statute[8] provides that a pension benefit accrued during the marriage is a marital asset. § 61.075(5)(a)4., Fla Stat. (2001). Important for our purposes, the equitable distribution statute states:
(8) The court may provide for equitable distribution of the marital assets and liabilities without regard to alimony for either party. After the determination of an equitable distribution of the marital assets and liabilities, the *1092 court shall consider whether a judgment of alimony shall be made.
§ 61.075(8), Fla. Stat. (2001) (emphasis added). Thus, the trial court is first to do the equitable distribution of assets, and once the assets have been equitably distributed, make a determination whether alimony should be awarded.
The 1988 legislature also amended the alimony statute. Ch. 88-98, § 2, Laws of Fla. The current version[9] provides:
(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.
Id. § 61.08(2) (emphasis added). By its plain language, section 61.08 requires the court to consider the assets and liabilities which have been equitably distributed to each party. Id. § 61.08(2)(d). This means that an equitably distributed pension is an asset to be considered on the issue of alimony. See Lauro v. Lauro, 757 So.2d 523 (Fla. 4th DCA 2000).
Thus, regardless of how the 1986 Diffenderfer decision may be interpreted, as of 1988 the legislature created the equitable distribution statute, and amended the alimony statute, on the issue now before us. Under the statutory provisions just quoted, a pension benefit is subject to equitable distribution. In determining the payor's ability to pay an alimony award, and the payee's need for alimony, the court shall consider all assets equitably distributed.
In the present case the former husband's entire argument was that under Diffenderfer, once he received his pension as part of his equitable distribution, and he retired, it followed that his $96,000 annual pension (and $1 million lump sum benefit) could not be considered as a source of alimony. He thus sought to terminate his $3,000 per month permanent alimony obligation, even though he is obviously well able to pay it.
For the reasons we have stated, we entirely agree with Judge Fierro's rejection of the husband's position. The former husband's pension was properly considered as a source of payment for the former husband's alimony obligation.

IV.
We affirm the trial court's judgment. We certify direct conflict with Rogers, 746 So.2d at 1179; Paris, 707 So.2d at 890; Ellis, 699 So.2d at 283; Bain, 687 So.2d at 81; and Gentile, 565 So.2d at 822-23.
Affirmed; direct conflict certified.
*1093 SCHWARTZ, C.J., and JORGENSON, LEVY, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO and RAMIREZ, JJ., concur.
GERSTEN, Judge (dissenting).
I respectfully dissent. Pension type benefits that are equitably distributed as offsetting assets in initial dissolution proceedings cannot subsequently be looked to as a source of income in calculating alimony in post-dissolution modification proceedings. See Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986). The majority opinion, which finds to the contrary, is inequitable and contradicts established Florida Supreme Court precedent.
In Diffenderfer, the Florida Supreme Court clearly stated that pension benefits can be treated as either part of the equitable distribution scheme, or the source for payments of alimony, but not both. With the exception of the majority decision, all Florida cases have followed Diffenderfer's proscription against "double-dipping"[10], including this Court's decisions in Hollinger v. Baur, 719 So.2d 954 (Fla. 3d DCA 1998), and Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA 1988), the Second District's decision in Rahn v. Rahn, 768 So.2d 1102 (Fla. 2d DCA 2000), the Fourth District's decisions in Schlafke v. Schlafke, 755 So.2d 706 (Fla. 4th DCA 1999) and Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990), and the Fifth District's decision in Ellis v. Ellis, 699 So.2d 280 (Fla. 5th DCA 1997).
Here, at the time of the dissolution, the parties entered into a settlement agreement which treated the former husband's entire pension as an asset for purposes of an immediate offset equitable distribution award.[11] Thus under Diffenderfer and its progeny, it would be inequitable for the former wife to be able to include his pension income twice for her benefit, first for a share of equitable distribution, and second for inclusion in his cash flow determination as a basis for alimony.[12] The majority's conclusions to the contrary, which are premised upon a typographical error that is irrelevant to the issue presented, inapposite caselaw, and a statutory amendment argument that is digressive to the *1094 specific post-dissolution issue raised here, are not well-founded.
First, the typographical error in the Westlaw/Premise version of Diffenderfer does not change the holding in Diffenderfer and has no impact on subsequent appellate court decisions applying Diffenderfer. The majority's lengthy discussion in this regard is simply "Much Ado About Nothing"[13] and does not provide support for its conclusion.
Rather, the typographical error is but one example of an equitable distribution scheme provided by the Diffenderfer court. The example merely discussed one of several approaches courts can take in dissolution cases, and involved a fact situation where each party received one-half of a pension plan. Under these circumstances the wife's interest in the husband's pension plan is not considered as an asseteither for reflecting the husband's ability to pay, or the wife's need.
Either version of this example is not a limiting scenario. Regardless, Diffenderfer's directive states that a trial court is not "to consider the same asset in calculating both property distribution and support obligations." Therefore, using the former husband's pension as a source for alimony would constitute inequitable and prohibited double-dippinga fact clearly recognized by 16 years of post-Diffenderfer precedent.
Second, the majority's reliance upon Lauro v. Lauro, 757 So.2d at 523, does not support its conclusion. Lauro involved a military pension plan, which was not distributed as an offsetting asset. Rather, under the Uniformed Services Former Spouse's Protection Act, 10 U.S.C. § 1408, the trial court in Lauro was required to consider the plan as a vested interest to both parties. Each party was allocated a percentage of the benefits which are thereafter automatically distributed by the federal government. See 10 U.S.C. § 1408 (2002). For this reason, the benefits are properly treated as income to both parties and thus properly considered in post-dissolution modification proceedings without running afoul of Diffenderfer's double-dipping prohibition.[14]
Next, no support exists for my colleagues' position that statutory amendments to the equitable distribution statute justify departure from 16 years of established precedent. The plain language of the statute, basic canons of interpretation, and preexisting principles of matrimonial law, compel a contrary conclusion.
The equitable distribution statute, Section 61.075, Florida Statutes (2001), is in *1095 complete accord with Diffenderfer and its progeny, including Hollinger and Waldman. The statute provides that in initial dissolution proceedings a trial court is to consider pension benefits as a marital asset subject to equitable distribution. § 61.075(5)(a)4., Fla. Stat. (2001). After assets are equitably distributed, the trial court is to consider whether alimony should be awarded. § 61.075(8), Fla. Stat. (2001).
Considerations in the initial dissolution proceedings are distinct from those raised in a post-dissolution scenario. The majority is mixing apples and oranges. Treatment of pension benefits in a subsequent modification proceeding depends upon the type of pension plan and how it was distributed at the time of the initial dissolution.[15]Diffenderfer and 16 years of postDiffenderfer case law do not conflict with any of the provisions of Chapter 61.
The majority's arguments are not well-founded. There is no principled basis to depart from Diffenderfer's clear proscription against using pension benefits received as an offsetting equitable distribution in a subsequent alimony determination, since: "Obviously ... injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations." Diffenderfer v. Diffenderfer, 491 So.2d at 267.
Although the majority may express its disagreement and certify a question to the supreme court, absent express overruling of Diffenderfer, we are bound as an appellate court to follow its directives. See Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974) (when a district court disagrees with supreme court precedent and decides it should be overruled, the district court's duty is to follow that precedent, and certify the question to the supreme court); Hoffman v. Jones, 280 So.2d 431 (Fla.1973)(appellate district court must follow supreme court precedent); Continental Assurance Co. v. Carroll, 485 So.2d 406 (Fla.1986)(same).
In conclusion, supreme court precedent and fundamental principles of fairness prohibit "double-dipping" into pension benefits which were equitably distributed as offsetting assets. Thus under the circumstances of this case, the former husband's pension should be excluded as a source of alimony in the post-modification proceedings. I would reverse.
NOTES
[1] The court expresses its appreciation to the Family Law Section of The Florida Bar for the amicus brief it has submitted in these proceedings.
[2] There was mandatory retirement for the husband at age sixty.
[3] The former wife moved for an increase in alimony, which the trial court denied. The former wife does not appeal that ruling.
[4] In the case of an ordinary pension plan, the question whether the pension benefit can be considered as a source of funds with which to pay alimony (or as income reducing the payee's need for alimony) is somewhat academic until such time as the employee has actually retired and the pension benefits are actually being paid.
[5] The Westlaw error was corrected during 2001, and a corrected CD-Rom was issued in 2002.
[6] Most cases which discuss Diffenderfer do not quote the court's example (457 So.2d at 267) of a fifty-fifty equitable distribution of a pension. It therefore cannot in those instances be established with certainty which version of Diffenderfer a particular panel used.
[7] Based on the overall reasoning of the Waldman decision, we are confident that the result in Waldman would have been the same regardless of the interpretation of Diffenderfer.
[8] There have been some subsequent minor amendments to the statute, see ch. 91-246, § 2, Laws of Fla.; ch. 93-188, §§ 3,8, Laws of Fla.; ch. 94-204, § 1, Laws of Fla.; ch. 96-305, § 1, Laws of Fla., but the main features have remained intact since 1988.
[9] See note 8 supra.
[10] "Double-dipping" occurs where property is awarded to a recipient spouse in equitable distribution, but then is also treated as a source of income for purposes of calculating the obligor spouse's alimony obligation.
[11] At the time of the 1993 dissolution, the former wife agreed to a present day market value for the pension, in exchange for substantial assets. At the time of the 1999 modification request, the former wife's offsetting assets had more than doubled. Her distribution of the former husbands's 401K plan had increased from $243,000 to $451,493, the IRA accounts increased from $39,000 to $60,000, and the stock securities increased from $4,500 to $59,752. The former wife still retains her substantial property interests.
[12] Parties have the right to make and rely upon settlement agreements. The majority opinion, however, negates large numbers of voluntarily negotiated agreements which relied upon 16 years of caselaw that prohibited double-dipping. This is manifestly unjust.

Here, in accord with Diffenderfer, the former husband relied upon being able to retire comfortably at the end of the six year period, and to enjoy the full use of the retirement monies he bargained for. Otherwise, the former husband could have negotiated the pension benefits for other assets, such as the right to retain his Delta 401K plan (which doubled to $451,493) or the marital home. Alternatively, the parties could have agreed the wife's equitable share of the pension benefits would be diminished in order to justify greater alimony up front. Regardless, the agreement the parties did enter into resulted in an equitable distribution in reliance upon Diffenderfer. It is manifestly unjust to convert the agreement into an inequitable distribution by now allowing the former wife to tap the same asset twice.
[13] The title of Shakespeare's famous play "Much Ado About Nothing" "encapsulates what is perhaps its most suggestive feature, that what the complex machinery of the comedy revolves around in the final analysis is nothing other than the nothing that lies at its core, a non-event or aporia that paradoxically becomes the centre of [its] significance." David Lucking, Plays Upon the Word: Shakespeare's Drama of Language, 22, Collana di Studi e Testi (Lecce: Millella, 1997), available at, http://www.hull.ac.uk/Hull/EL_Web/renforum/v2no1/lucking.htm. Both the play, and the majority's analysis, exemplify the significance of interpretation in the construction of a means to achieve a particular result.
[14] It is important to keep in mind that there are circumstances where pension type benefits can properly be considered as income in alimony modification determinations, and where such consideration is entirely consistent with Diffenderfer. Treatment depends upon the type of pension plan and how it was distributed at the time of the initial dissolution. For example, if the benefit is currently in a nonpaying status and the plan's valuation has not been set, a court may award a percentage interest to each spouse which in effect defers distribution. Under these circumstances, when the benefit matures, each parties' percentage is properly considered as a source of income to both parties in post-dissolution modification proceedings.
[15] In cases where a pension plan is divided and distribution is deferred until such time as the participant spouse retires, both parties are entitled to the benefit of the growth of the value of the plan existing at the time of the dissolution. See Boyett v. Boyett, 703 So.2d 451 (Fla.1997). However, the Florida Supreme Court in Boyett recognized that the recipient spouse does not have the right to participate in the growth of marital accumulations if payment of the retirement asset is made at the time of dissolution by lump sum payment of present value. See Boyett v. Boyett, 703 So.2d at 453.