876 So.2d 1267 (2004)
Kathryne L. CARLTON, Appellant,
v.
Durward W. CARLTON, Appellee.
No. 2D03-1846.
District Court of Appeal of Florida, Second District.
July 9, 2004.
*1268 Stanley M. Krawetz and Paula M. Marmion of Browning, Clayton & Krawetz, Sarasota, for Appellant.
Sandra Sanders of Sandra Sanders, P.A., Arcadia, for Appellee.
ALTENBERND, Chief Judge.
Kathryne L. Carlton appeals a final judgment that dissolved her forty-two-year marriage to Durward W. Carlton. This case involves two retired individuals in their early sixties, whose relatively modest assets and income must be divided in a way that can sustain their respective financial well-being for the remainder of their lives. Because the financial provisions in the final judgment ensure the financial well-being of the husband but put the wife's financial future at serious risk, we reverse.
At the time of the final hearing, Mr. and Mrs. Carlton had four major marital assets that were listed in the final judgment and assigned the following values: (1) the marital home, valued at $189,000; (2) a Salomon Smith Barney account in the wife's name valued at $52,000; (3) the husband's pension valued at $248,259; and (4) a Salomon Smith Barney account in the husband's name valued at $238,000. The wife had a nonmarital interest in real property valued at $150,000, while the husband had nonmarital real property consisting of ninety-nine acres valued at $210,000.
Both parties were retired. Thus, the only source of income available to each party, unconnected with the income produced by their assets, was social security. The wife received social security benefits of $555 per month and the husband received social security benefits of $1197 per month. At the time of trial, the husband received $1990.90 per month from his pension. The wife received nominal rental income of $79.31 from her nonmarital property. The parties' other assets were not producing monthly income. Neither party yet qualified for medicare coverage, and the husband testified that he had been paying $1297 per month to maintain medical and dental insurance on both parties.
In the final judgment, the trial court (1) awarded the wife the marital home and the Salomon Smith Barney account in her name; (2) awarded the husband his pension; and (3) used the Salomon Smith Barney account in the husband's name to equalize the property division, resulting in the wife receiving $132,350 of the value of the account and the husband receiving the remaining balance of $105,650. The trial court then denied the wife's requests for *1269 alimony,[1] for contribution to her health insurance expenses, and for contribution to her attorneys' fees or costs.
Although the marital assets were divided equally so as to provide each party $380,149.50 worth of assets, the nature of the assets awarded to each party created a significant disparity in the parties' financial situation. The distribution resulted in the husband having a gross monthly income of $3187.90 and the wife having a gross monthly income of $634.31. Each party had to pay their individual health insurance costs from their respective incomes. Although there was no evidence on how much individual medical insurance policies would cost for each party, the combined cost was almost $1300 per month. One might assume that the wife's health insurance cost alone could easily exhaust her monthly income.
In Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), the Florida Supreme Court explained:
Dissolution proceedings present a trial judge with the difficult problem of apportioning assets acquired by the parties and providing necessary support. The judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump sum alimony, permanent periodic alimony, rehabilitative alimony, child support, a vested special equity in property, and an award of exclusive possession of property. As considered by the trial court, these remedies are interrelated; to the extent of their eventual use, the remedies are part of one overall scheme.
....
We recognize that a trial court need not equalize the financial position of the parties. However, a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be "shortchanged."
Id. at 1202, 1204 (citation omitted); see also ch. 61, Fla. Stat. (2003). We conclude that the financial provisions in the final judgment in this case shortchanged the wife.
The division of property and the provision of adequate support for each party in this case is complicated by the fact that the singular most valuable asset of this marriage and the primary source of income is the husband's pension. When a pension is the most valuable asset and the primary source of income in a marriage, the trial court is challenged to create financial provisions that adequately provide for the support of each party without unfairly "double dipping"  that is, treating a pension that is fully vested and paying out its benefits as both an asset for equitable distribution purposes and as a source for alimony, even after the other spouse has received their equitable share of that asset or an asset in exchange for that asset. See Diffenderfer v. Diffenderfer, 491 So.2d 265, 267-68 (Fla.1986).[2]
*1270 Both Mr. and Mrs. Carlton are retired and no longer earning income from their labor. They are also relatively young retirees, and therefore their assets must support them for as long as they live  possibly another twenty years or longer. The husband's pension is the one asset that will provide a stream of income for the life of the parties. In contrast, the marital home provides no income and generates significant expenses. The remaining financial accounts might provide some income, but it is not clear that a portion of these accounts alone, without the pension, could provide enough income to sustain one of the parties without spending the principal balance, and therefore the principal balance could be exhausted during one party's lifetime.
By awarding the husband all of the pension in equitable distribution, the trial court has awarded the husband the one marital asset that can assure a continuing stream of income sufficient to provide for this couple for the rest of their lives. Further, the distribution results in a disparity in the monthly amount of income available to each party to meet their needs, a disparity that "shortchanges" the wife. As a result, the trial court abused its discretion in fashioning the financial provisions in the final judgment. A different financial scheme is required.
The husband argues that the resulting disparity in the parties' income is not an abuse of discretion because the wife may use the funds awarded to her in the two Salomon Smith Barney accounts to produce the income necessary to meet her needs. There are some difficulties with this argument. First, the trial court made no findings as to the amount of income the wife could generate from her share of these accounts. The husband presented evidence that if he paid the wife $116,000 cash as part of a proposed distribution, that cash could produce $775 per month in income. However, neither party presented evidence as to the liquidity of the Salomon Smith Barney accounts and whether they could be converted into income-producing assets without any negative financial implications. Thus, the trial court could not determine what amount of income the wife might obtain from the investment of her remaining assets. Even if the assets could produce $775 in income, this would leave the wife only $1425 per month in income, which appears inadequate to meet her needs. Also, the husband would presumably then be able to produce a similar amount of income from the balance of the Salomon Smith Barney account awarded to him, thus maintaining the disparity in income.
Second, the wife presented uncontradicted testimony that she had been required to withdraw funds from the Salomon Smith Barney account in her name in order to support herself during the pendency of the litigation. Although the trial court may not have erred in valuing that account as of an earlier date than the date of trial, it could not attribute potential income to the wife from funds which no longer existed. In addition, because the trial court denied the wife's request for attorneys' fees, the wife's liquid assets may be further depleted by her obligation to pay those fees.
As noted in Canakaris, 382 So.2d at 1202, and as specifically outlined in chapter 61, the trial court has numerous remedies available to adjust this financial distribution scheme to produce a more equitable *1271 result that protects the wife's financial future. Because the trial court needs the flexibility that those remedies can provide, we do not mandate any particular scheme of distribution be imposed on remand. However, the final financial provisions in the judgment of dissolution of marriage should result in a distribution of assets and income that protects each party's financial well-being throughout the remainder of their expected life span. Most likely, this will involve either dividing portions of the pension between the parties or treating the pension as income rather than a marital asset. The potential solution could also involve maintaining the marital home as a joint asset, with the parties remaining tenants in common and potentially awarding the wife the exclusive use and possession of the home.[3] There is no reason that these parties should not enjoy relative comfort throughout their retirement from the marital assets they have acquired during their long-term marriage.
Because we are reversing the financial provisions in the final judgment, we need not address some of the issues raised by the wife regarding specific assets. However, we comment on two issues that may recur on remand. First, there is a dispute as to a sixty-foot roadway that apparently adjoins the husband's nonmarital property and the marital home. This court has been unable to ascertain from the record the exact nature of this roadway: how it is titled, when it was acquired, whether its value was included in the appraisal of the marital home, and whether the legal description of the marital home in the provision of the final judgment that awarded the property to the wife included this roadway. On remand, the trial court may revisit this issue.
Second, there was uncontradicted testimony that the wife was named the irrevocable beneficiary of survivor benefits for the husband's pension and that these benefits were fully vested. The husband presented expert testimony that those benefits had a present value of $15,872. The final judgment does not address this asset. Although the wife requested the final judgment specifically confirm her status as the irrevocable beneficiary of these benefits, at oral argument it was suggested that the wife would receive these benefits with or without a provision in the final judgment. On remand, the court can confirm whether the wife is the irrevocable beneficiary of the funds and whether provision must be made in the final judgment to confirm this.
The financial provisions of the final judgment are therefore reversed and remanded for further proceedings consistent with this opinion.
SALCINES and SILBERMAN, JJ., concur.
NOTES
[1] We note that in paragraph four of the "findings of fact" portion of the judgment, the trial court stated, "[T]he Wife has the need and the Husband has the ability to pay permanent periodic alimony." However, in the "ordered and adjudged" portion of the judgment, the trial court denied the wife any alimony, attorneys' fees and costs, or contribution to her health insurance expenses "[d]ue to the fact that the marital assets have been divided equally and based upon the parties' respective incomes."
[2] We note that there is currently some controversy over whether Diffenderfer intended to prohibit "double-dipping"  distributing the value of an asset in equitable distribution and then factoring the income one or both parties receive from it in determining alimony. See Acker v. Acker, 821 So.2d 1088 (Fla. 3d DCA 2002), review granted, 842 So.2d 842 (Fla.2003); Lauro v. Lauro, 757 So.2d 523 (Fla. 4th DCA 2000). Compare McLean v. McLean, 652 So.2d 1178, 1181 (Fla. 2d DCA 1995), with Rogers v. Rogers, 622 So.2d 96 (Fla. 2d DCA 1993).
[3] See § 61.075(1)(h), Fla. Stat. (2003).