687 So.2d 79 (1997)
Addison L. BAIN, Appellant,
v.
Ingeborg K. BAIN, Appellee.
No. 96-826.
District Court of Appeal of Florida, Fifth District.
February 7, 1997.
*80 James R. Dressler, Cocoa Beach, for Appellant.
Paul M. Goldman of Dean, Mead, Spielvogel, Goldman & Boyd, Merritt Island, for Appellee.
GOSHORN, Judge.
Addison Bain (the "former husband") appeals the order denying his motion to modify the final judgment of dissolution. He argues that the court erred in denying his petition for modification and further that it erroneously included his retirement benefits as income in determining his ability to pay alimony.
This is the second appearance of the Bains in this court. See Bain v. Bain, 553 So.2d 1389 (Fla. 5th DCA 1990). In Bain, the former husband appealed the disproportionate division of marital assets to the former wife. This court reversed and remanded for the trial court to re-address the distribution of assets as well as the permanent alimony award. Labeling the former husband's civil service retirement pension as an "area of concern," we cautioned, "We note also a danger that the retirement pension will ultimately be used as a basis for determining alimony as well as for equitable distribution purposes." Id. at 1391, 1392.
On remand, the trial court reduced the former husband's civil service retirement benefit to a present dollar amount and treated it as a marital asset subject to distribution. The court divided the assets 50-50. The former husband's share consisted almost entirely of his pension, with the exception of $6,466 of the present value thereof which was awarded the former wife to equalize the distribution. Neither party appealed this judgment.
In May, 1994, the former husband filed his supplemental petition to modify the amended final judgment, alleging therein a substantial change in circumstances. He cited the fact that he had been forced to retire at age 58 and accordingly had suffered a substantial decline in his income. He asserted that the former wife, in the meantime, had enjoyed income from her employment as a real estate agent that was greater than anticipated at the time of the dissolution. She further had attained the age needed to begin drawing on her own social security retirement benefits. The former husband contended that he was unable to pay alimony at the rate ordered in the amended final judgment and that the former wife was not in need of the amount ordered.
The former husband, who was 60 years old at the time of the hearing, was employed by NASA until May 3, 1994, on which date he retired. He denied wanting to retire at that time, pointing out that he had been eligible to retire in September, 1992, but had continued working. However, cutbacks began occurring in his industry. He took steps to protect his employment, such as seeking a reclassification and a promotion, but was unsuccessful. His position was frozen, and he learned that 82 positions were being eliminated. At this point, the former husband applied for a buy-out program NASA was offering.
The former husband stated that he accepted the buy-out only because of the prevailing circumstances. He testified that he wants to work and had taken affirmative steps to obtain employment, including sending numerous resumes to both in-state and out-of-state *81 employers in his field and contacting prospective employers weekly. He continues to serve on state and federal energy panels to network with people in his industry. The former husband also set up his own consulting business. He provided services to a gas company for over five months and earned $5850. Unfortunately, the company terminated all of its consulting contracts. He eventually landed another consulting job with a Tallahassee firm, from which he earned $700. Those two jobs provided his only income, other than his retirement income, since May, 1994.
The trial court found that the former husband filed for retirement in anticipation of being laid off. While he had made a good faith effort to become re-employed, the court continued, the former husband was "probably capable of earning income over and above his retirement." It denied the former husband's petition.
It appears the trial court implicitly agreed that the former husband's choice of taking the buy-out rather than waiting to be laid off was reasonable and prudent. Indeed, the former husband's position was later eliminated. These facts support a conclusion that the former husband did not voluntarily retire, but rather was pushed out. Certainly there is no suggestion that he sought to leave the work force. Rather, the evidence was uncontradicted that the former husband wanted to work for NASA and would have continued there had it not appeared inevitable that his position was going to be terminated. Under these circumstances, the trial court erred in failing to abate support until such time as the former husband becomes reemployed. See Bennett v. Department of Revenue, 664 So.2d 33 (Fla. 5th DCA 1995) (holding that it was error to continue the support obligation where the payor had become unemployed and lacked the ability to pay support through no fault of his own); Davis v. Davis, 528 So.2d 34, 35 (Fla. 5th DCA 1988) ("When an inability to pay support alimony arises the only proper thing to do is suspend payments until the ability is restored.").
Additionally, we agree with the former husband's assertion that the court erred in considering his retirement pension as a source from which alimony should be paid. Unfortunately, the very concern expressed by this court in the original Bain, that there was a danger that the retirement pension would ultimately be used as a basis for determining the alimony as well as for equitable distribution purposes, came to fruition. The trial court awarded the former husband his retirement annuity as equitable distribution, then turned around and considered the retirement as a source of alimony. This was improper. See Diffenderfer v. Diffenderfer, 491 So.2d 265, 267 (Fla.1986) ("Obviously, however, injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations."); Rogers v. Rogers, 622 So.2d 96 (Fla. 2d DCA 1993) (recognizing that the portion of a pension distributed as marital property cannot also be considered as a source of payment of alimony).
We affirm the trial court's refusal to modify the support obligation, but remand for inclusion of a provision suspending the support obligation, except for the albeit meager sum that is available due to post-dissolution contributions to retirement. Upon remand, a determination of the amount of retirement attributable to post-dissolution contributions should be made, and that amount may be considered as a source of alimony. While that amount may be small, it represents the only source from which alimony can be ordered. The suspension of the remaining support obligation should be in effect until the former husband regains his ability to pay.
REVERSED and REMANDED with instructions.
PETERSON, C.J., concurs.
W. SHARP, J., concurring in part, and dissenting in part, with opinion.
W. SHARP, Judge, concurring in part, and dissenting in part.
I agree with the majority opinion that the former husband established and the trial court so found, a substantial change of circumstances caused by the loss of the former husband's well-paying job, and that it erred in not granting him relief from the previously *82 ordered alimony obligation. I also agree that the pension income (that portion allocable to the former husband's entitlement, prior to the dissolution decree) should not now be considered in determining his ability to pay alimony. That would be "double-dipping" and inequitable since that asset was equitably divided by the parties as part of the dissolution decree.
However, on remand, I think the trial court should not be solely restricted to suspending the prior award, and making an award based on the small amount of pension earned after the dissolution decree. Since an additional evidentiary hearing will be necessary, on remand, the trial court should be permitted to consider evidence relevant to the current circumstances of the parties, including whether or not a basis exists to impute a minimum income to the former husband. He is only 60 years old, in good health generally, and relatively young to completely retire from the work force. The former wife is 67 years old, in very poor health, and is unable to support herself without assistance from the former husband.
Although Pimm v. Pimm, 601 So.2d 534 (Fla.1992) deals with a voluntary retirement, and Bain's loss of employment in this case was not, the language in Pimm is instructive:
Based upon this widespread acceptance of sixty-five as the normal retirement age, we find that one would have a significant burden to show that a voluntary retirement before the age of sixty-five is reasonable. Even at the age of sixty-five or later, a payor spouse should not be permitted to unilaterally choose voluntary retirement if this choice places the receiving spouse in peril of poverty. Thus, the court should consider the needs of the receiving spouse and the impact a termination or reduction of alimony would have on him or her.
601 So.2d at 537. Complete retirement from the work force in this case is analogous, in my view, to premature voluntary retirement addressed in the Pimm case, and should be decided by similar principles.