904 So.2d 384 (2005)
Charles Frederick ACKER, Petitioner,
v.
Barbara Drumm ACKER, Respondent.
No. SC02-1925.
Supreme Court of Florida.
April 14, 2005.
*385 Jerome J. Kavulich of Ruso and Kavulich, P.L., Coral Gables, FL, for Petitioner.
Nancy A. Hass, Hallandale, FL, for Respondent.
WELLS, J.
We have for review the decision in Acker v. Acker, 821 So.2d 1088 (Fla. 3d DCA 2002), which certified conflict with the decisions in Rogers v. Rogers, 746 So.2d 1176 (Fla. 2d DCA 1999); Paris v. Paris, 707 So.2d 889 (Fla. 5th DCA 1998); Ellis v. Ellis, 699 So.2d 280 (Fla. 5th DCA 1997); Bain v. Bain, 687 So.2d 79 (Fla. 5th DCA 1997); and Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the following reasons, we approve the decision of the Third District Court of Appeal in the instant case and disapprove the decisions of the other district courts.

FACTS
Petitioner Charles Acker (Mr. Acker) and respondent Barbara Acker (Mrs. Acker) were divorced after twenty-three years of marriage. Mr. Acker was fifty-three years old at the time of dissolution and a pilot for Delta Airlines, earning approximately $160,000 per year. Mrs. Acker earned approximately $10,000 per year from part-time employment.
At the time of dissolution in 1993, the parties entered into a settlement agreement under which the parties' substantial assets were distributed between them. As part of his equitable distribution, Mr. Acker received his pension benefits from Delta Airlines. Mrs. Acker received, among other things, the marital residence, Mr. Acker's 401(k) plan, and other IRA accounts and stock plans. Mrs. Acker was also awarded permanent alimony in the amount of $3000 per month. The settlement agreement provided that the alimony awarded to Mrs. Acker was not modifiable for any reason for the first three years but could be modified at the end of those three years. The parties also agreed to revisit the alimony award in 1999, when Mr. Acker reached Delta's mandatory retirement age of sixty.
In 1996, Delta offered an early retirement option, which Mr. Acker accepted. Under this retirement option, Mr. Acker's pension benefits were substantially larger than the value of the pension at the time of dissolution. At the time of dissolution, Mr. Acker's pension was valued at approximately $487,000. At the time of retirement, *386 Mr. Acker received a lump-sum payment of $1,066,378, plus $7803 per month.
Mr. Acker turned sixty on March 1, 1999, at which time he ceased paying alimony to Mrs. Acker and moved for termination of his alimony obligation, arguing that because his monthly income had decreased from approximately $13,000 to approximately $7803, he no longer had the ability to pay alimony.
The trial court denied Mr. Acker's motion to terminate alimony, finding that the provision of the parties' 1993 settlement agreement which stated that the issue of alimony would be "revisited" when Mr. Acker retired did not mean that alimony payments would automatically be terminated. The trial court further rejected Mr. Acker's argument that he took a risk by giving his wife his savings plans and keeping only his pension because the monthly value of his pension benefits could have decreased. The trial court reasoned that Mr. Acker's monthly benefits did not decrease but, rather, generated a one-million-dollar cash payoff, which had increased by $250,000. The court therefore concluded that, taking into consideration the benefits received from Mr. Acker's pension, Mr. Acker continues to have the ability to pay Mrs. Acker $3000 per month in permanent alimony, and Mrs. Acker continues to have the need for such payments. Acker v. Acker, No. 92-51581 (Fla. 11th Cir. Ct. order filed Sept. 21, 2000).
Mr. Acker appealed the trial court's order to the Third District Court of Appeal, arguing that the trial court erred as a matter of law in considering his pension benefits as a source of funds with which to pay alimony because his pension had been treated as property and awarded to him in equitable distribution. He argued that to now consider the pension benefits in a determination of alimony would violate this Court's decision in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986). After a panel of the district court heard oral argument on this issue, the case was referred to the district court for en banc review. The parties were thereafter directed to address whether the court should recede from two of its prior decisions that interpreted Diffenderfer.
The Third District divided its opinion into two sections, the first discussing this Court's decision in Diffenderfer. The Third District noted that some of the difficulty in analyzing this issue resulted from a typographical error contained in the Westlaw and CD-Rom versions of the Diffenderfer decision. The pertinent portions of the correct Diffenderfer opinion in the words of the Third District are as follows:
In Diffenderfer, the Florida Supreme Court held "that a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property." 491 So.2d at 270. The court also said that "such benefits may be considered as a source of payment of permanent periodic alimony." Id. at 267. The court then said:
Obviously, however, injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations. If the wife, for example, has received through equitable distribution or lump sum alimony one-half of the husband's retirement pension, her interest in his pension should not be considered as an asset reflecting his ability to pay.

Id. (emphasis added).
Acker v. Acker, 821 So.2d 1088, 1090 (Fla. 3d DCA 2002). Thus, if one-half of the husband's pension is given to the wife, that half is no longer available to the husband in calculating the husband's ability to pay alimony. The half which has been transferred *387 to the wife, however, would reduce the wife's need for alimony at such time as the parties were able to draw on the pension benefits. Id.
At the time Diffenderfer was released, the Westlaw and CD-Rom versions erroneously substituted the word "his" for "her" in the above-emphasized phrase. The incorrect decision therefore provided: "If the wife, for example, has received through equitable distribution or lump sum alimony one-half of the husband's retirement pension, his interest in his pension should not be considered as an asset reflecting his ability to pay." Id. The Third District concluded that the incorrect version of Diffenderfer entirely changed the meaning of the opinion, causing all five district courts to erroneously conclude that "a pension could be treated as an asset for equitable distribution or as income available to determine a spouse's ability to pay alimony, but not both." Id. at 1091 (quoting Rogers v. Rogers, 746 So.2d 1176, 1179 (Fla. 2d DCA 1999)). The court reasoned that under the plain language of the correct version of Diffenderfer, a court is in fact permitted to consider a pension which has been equitably distributed to the payor in determining the payor's ability to pay alimony. In so holding, the court receded from its prior decisions in Hollinger v. Baur, 719 So.2d 954 (Fla. 3d DCA 1998), and Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA 1988).
The second portion of the Third District's opinion went on to note, however, that the foregoing discussion of Diffenderfer is rendered academic because the Legislature subsequently enacted statutes which are now controlling on this issue. In 1988, the Legislature created the equitable distribution statute[1] and amended the alimony statute.[2] The court concluded *388 that the plain language of these statutes requires the court to consider the assets and liabilities that have been distributed to each party, which means that an equitably distributed pension is an asset to be considered on the issue of alimony. Acker, 821 So.2d at 1092. Thus, the district court held that Mr. Acker's pension was properly considered by the trial court in the instant case and certified conflict with Rogers v. Rogers, 746 So.2d 1176 (Fla. 2d DCA 1999); Paris v. Paris, 707 So.2d 889 (Fla. 5th DCA 1998); Ellis v. Ellis, 699 So.2d 280 (Fla. 5th DCA 1997); Bain v. Bain, 687 So.2d 79 (Fla. 5th DCA 1997); and Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990).

ANALYSIS
The issue presently before this Court is whether pension benefits equitably distributed to a party may be considered in determining the proper amount of alimony. We agree with the Third District that pension benefits can be so considered.
In this case, the parties appear to have contemplated that at the time of Mr. Acker's retirement, the issue of the alimony paid to Mrs. Acker would be reexamined. The 1993 settlement agreement specifically provided that "at the end of approximately six years, when the husband retires, no longer flies for Delta and is living off his pension, [the parties] agree to revisit the matter of the amount of alimony that he pays, thereafter." Acker v. Acker, No. 92-51581, agreement at 11 (Fla. 11th Cir. Ct. agreement filed Mar. 24, 1993). Based upon the specific provision of the parties' settlement agreement, we find no error in the trial court considering the income received from Mr. Acker's pension in denying Mr. Acker's petition to terminate his alimony payments. By the agreement, the trial judge could have reduced the alimony payment if the evidence indicated that such reduction was then equitable. But the trial judge did not make that decision, and the decision made by the trial judge was within the trial judge's proper discretion based upon the evidence.
We reject Mr. Acker's argument that the trial court's decision is in conflict with a correct application of this Court's decision in Diffenderfer. Rather, we approve the Third District Court of Appeal's opinion in respect to Diffenderfer and the court's application of sections 61.075 and 61.08, Florida Statutes.
In dissolution cases, the trial judge possesses the broad, discretionary authority to do equity between the parties. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980). This discretionary authority is guided by the specific considerations provided by the Legislature. We agree with the Third District that in sections 61.075 and 61.08, Florida Statutes, the Legislature provided the guidelines that courts are to follow in determining an equitable distribution of marital property and in determining whether to require a reasonable amount of alimony. These statutory provisions expressly authorize the trial court to include an equitably distributed pension in a determination of alimony.
We further agree with the Fourth District Court of Appeal's reading of Diffenderfer in Lauro v. Lauro, 757 So.2d 523, 524 (Fla. 4th DCA 2000). In Lauro, the district court interpreted this Court's statement in Diffenderfer with respect to pension plans that an "injustice would result *389 if the trial court were to consider the same asset in calculating both property distribution and support obligations," 491 So.2d at 267, as follows:
What the supreme court meant, however, is explained by the next sentence, which is that the one-half of the husband's pension distributed to the wife could not be "considered as an asset reflecting his ability to pay." In other words, the ability of the husband in Diffenderfer to pay alimony should be based on his financial situation after equitable distribution, not before. Similarly, the needs of the wife in this case should be based on her financial situation after equitable distribution, not before. That would include her income from the pension.
Section 61.08(2)(d), Florida Statutes (1997), requires trial courts to consider, when fashioning awards of alimony, "all relevant economic factors, including but not limited to: ... the financial resources of each party, the non-marital and the marital assets and liabilities distributed to each." Section 61.08(2)(g) requires the court to consider "all sources of income available to either party."
Lauro, 757 So.2d at 524-25.
Accordingly, the portion of a pension which has been equitably distributed to a spouse cannot be considered in determining the other spouse's ability to pay alimony because the other spouse obviously no longer has that portion of the marital asset. Similarly, the needs of a spouse should be based on that spouse's financial situation after, not before, equitable distribution. We therefore approve the decision of the Third District Court of Appeal in this case and disapprove Rogers, Paris, Ellis, Bain, and Gentile to the extent they conflict with this decision.
We find that Mr. Acker's argument that the trial court erred in awarding attorney fees to Mrs. Acker is not preserved for review.
It is so ordered.
PARIENTE, C.J., and ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
BELL, J., concurs with an opinion, in which CANTERO, J., concurs.
LEWIS, J., dissents with an opinion.
BELL, J., concurring.
The Ackers' marital assets were equitably distributed when their marriage was dissolved. Mr. Acker received his pension, and Ms. Acker received the remainder of the marital assets. Ms. Acker also was awarded permanent, periodic alimony. Mr. Acker has since retired, and, because he no longer draws a salary, he seeks to terminate his obligation to make alimony payments to Ms. Acker. He argues that he no longer has the ability to make such payments.
The issue in this case is whether the income Mr. Acker receives from his pension, which was awarded to him in the equitable distribution, may be considered by the court when determining Mr. Acker's ability to pay alimony. I agree with the majority that this income should be considered in determining Mr. Acker's continued ability to pay alimony. I recognize the concerns raised by the dissent, but I conclude that the majority's holding is dictated by the statutes governing equitable distribution and alimony.

I. Pensions: Equitable Distribution, Alimony, and the Statutory Scheme
The issue in this case is whether the income Mr. Acker receives from his pension, which was equitably distributed to *390 him, may be considered by the court when determining Mr. Acker's continued ability to pay alimony. The resolution of this issue is controlled by Florida's equitable-distribution and alimony statutes. See §§ 61.075, Fla. Stat. (2003) (equitable distribution); 61.08, Fla. Stat. (2003) (alimony). The first thing these statutes make clear is that Mr. Acker's pension was a marital asset subject to equitable distribution upon dissolution of marriage. See § 61.075(5)(a)(4), Fla. Stat. (2003) (defining "marital assets" to include "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs"); § 61.076(1), Fla. Stat. (2003) ("All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution.").
It is simply not the case that Mr. Acker's pension could either have been considered as a marital asset subject to equitable distribution or as a source of funds that would enable Mr. Acker to make alimony payments to Ms. Acker. To treat the portion of Mr. Acker's pension that accrued during the marriage simply as a source of funds from which Mr. Acker would be able to draw to make alimony payments to Ms. Acker would treat the pension as the nonmarital or separate property of Mr. Acker. The contrary conclusion, embraced by the dissent and adopted nearly uniformly by the case law, relies on a mistaken reading of our decision in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986),[3] and a failure to applyregardless of what we might have held in Diffenderferthe subsequently enacted statutes discussed above.
In fact, the precise holding in Diffenderfer was that "a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property." 491 So.2d at 270 (emphasis added). We rejected the First District's decision, which "held that the husband's entitlement to retirement benefits could not properly be considered marital property subject to equitable distribution, and limited consideration of the benefits to a source of maintenance and support obligations." Id. at 265; see also id. at 266-67 ("We ... join[] the vast majority of jurisdictions which have found it necessary to consider entitlement to [retirement] benefits in order to achieve an equitable distribution."); id. at 267 ("To the extent that [a pension right] result[s] from employment time [during the marriage], [it is a] contract right[] of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, [is] marital property.") (quoting Majauskas v. Majauskas, 61 N.Y.2d 481, 474 N.Y.S.2d 699, 463 N.E.2d 15, 20-21 (1984)).
*391 The widespread misreading of Diffenderfer is the result of the seemingly contradictory language we used in the decision. For instance, in addition to our holding that "a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property," 491 So.2d at 270 (emphasis added), we also said that "such benefits may be considered as a source of payment of permanent periodic alimony. The potential income may certainly bear on the employee spouse's ability to pay...." Id. at 267 (emphasis added). If we had stopped there it would have been clear that after the court distributed the pension plan (as it must in light of its status as marital property) to one party or the other, or a portion to one party and a portion to the other, it could then, in determining whether an award of alimony was appropriate, consider the pension benefits as a source of funds from which the pension-receiving party's ability to make alimony payments could be determined. We went on to note, however, that it would be unjust "to consider the same asset in calculating both property distribution and support obligations." Id. at 267. This is the statement that has caused courts to conclude that a pension "may be considered marital property for the purpose of equalizing and distributing assets for equitable distribution purposes or as an asset source for payment for alimony, but not both." Dissenting op. at 396. But, as the majority and the district court explain, our "injustice" statement must be read in light of the sentence which followed it.
After stating that it would be unjust "to consider the same asset in calculating both property distribution and support obligations," we explained that "[i]f the wife, for example, has received through equitable distribution or lump sum alimony one-half of the husband's retirement pension, her interest in his pension should not be considered as an asset reflecting his ability to pay." Diffenderfer, 491 So.2d at 267. In this light, it is clear that our warning simply reflected the logical conclusion that once the pension (or a portion thereof) was distributed to one party, the pension (or that portion) should no longer be considered as an as asset reflecting the other party's ability to pay alimony. Were our warning about injustice to be read any other way, it would make the Diffenderfer decision internally contradictory. It makes no sense to hold, on one hand, that pension benefits must be treated as marital property and equitably distributed as such, but, on the other hand, that such benefits may be treated either as marital property to be equitably distributed or as a source of funds from which the pensioner can make alimony payments.
In any event, the majority and the district court correctly note that Diffenderfer's holding on this point is immaterial in light of the subsequently enacted equitable-distribution and alimony statutes. Section 61.076(1) clearly provides that "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution." § 61.076(1), Fla. Stat. (2003). There is no question then that the reading of Diffenderfer that would hold that pension benefits may be treated either as marital property subject to equitable distribution or as a source of funds for the payment of alimony, if indeed that was what Diffenderfer held, has clearly been legislatively altered: pension benefits accrued during the marriage must be treated as marital property subject to equitable distribution.
The question then becomes whether such benefits, after they are distributed *392 and once they begin to produce a stream of income, can be considered as a source of funds reflecting the pension-receiving party's ability to pay alimony. This question is answered by section 61.08(2), which provides that "[i]n determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to ... [t]he financial resources of each party, [including]... the marital assets ... distributed to each[, and] ... [a]ll sources of income available to either party." § 61.08(2)(d), (g), Fla. Stat. (2003).[4] Because these statutes are clear, I agree with the majority that the income Mr. Acker is now receiving from his pension, the rights to which were equitably distributed to him, should be considered (along with all other relevant factors) by the court when determining Mr. Acker's ability to pay alimony.

II. The "Double-Dipping" Argument
I recognize the "double-dipping" concerns raised by the dissent, but I believe such concerns are more appropriately addressed to the Legislature. The New Jersey Legislature, for example, amended its alimony statute to provide explicitly that "[w]hen a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony." N.J. Stat. Ann. § 2A:34-23(b)(13) (West 2000); see also Innes v. Innes, 117 N.J. 496, 569 A.2d 770, 775 (1990) ("The plain language of the pertinent amendment provides that income from pension benefits that have been treated as an asset for equitable distribution purposes ... is not to be considered in determining alimony."). Florida's statutory scheme, however, contains no such provision. Contrary to New Jersey, Florida's statutory scheme expressly provides that among the relevant economic factors to be considered in fashioning an appropriate amount of alimony are "[t]he financial resources of each party, [including] ... the marital assets ... distributed to each," § 61.08(2)(d), Fla. Stat. (2003) (emphasis added), and "[a]ll sources of income available to either party." § 61.08(2)(g), Fla. Stat. (2003).
The statutory scheme adopted by the Florida Legislature and this Court's decision today applying that scheme are not the result of "faulty reasoning and superficial logic," dissenting op. at 395, nor has either "accomplish[ed] the total destruction of the foundation of the principles upon which the concept of equitable distribution of property has been based with regard to [pension assets]." Dissenting op. at 396. Whether the benefits received from an equitably distributed pension should be considered in determining the pension-receiving party's ability to pay alimony is a controversial issue on which there are varying perspectives; but there is certainly logical support for the position adopted by the Florida Legislature, and that position will not spell the "total destruction" of the "concept of equitable distribution."
*393 Part of the dissent's concerns, I think, are based on a misconception of just what today's decision (and the legislative scheme mandating it) will actually do. The dissent repeatedly refers to the Court's decision as effecting a redistribution of the pension asset or a modification of the original property settlement. See, e.g., Dissenting op. at 32-33 ("Former marital assets equitably distributed as property are not subject to redistribution a second time due to later values attributed to the asset used to equitably distribute property.... [S]pouses should not be entitled to a modification following the finalized equitable distribution as a result of the increase or decrease in value of an asset equitably distributed as property to the other former spouse.... Here, the majority essentially authorizes a second redistribution of the former husband's pension planalready distributed to him as property in the initial dissolution action with an equal value of assets distributed as property to the wife and subtracted from other marital assetsbecause the pension plan increased in value following the final dissolution."). Allowing a court to look to Mr. Acker's pension benefits when determining his ability to pay alimony will in no way "redistribute" the rights to the pension plan. Consider, for instance, if Mr. Acker also had a pension plan that had accrued entirely in the years after the parties' marriage was dissolved. Would allowing a court to look to the benefits received from that pension, in determining Mr. Acker's ability to pay alimony, somehow transfer the rights to that pension to Ms. Acker?
The dissent asserts that Ms. Acker has no "alimony entitlement" to the assets previously equitably distributed to Mr. Acker. Dissenting op. at 31. Respectfully, the issue here is not whether one party has an entitlement to the other party's assets; those claims were resolved in the equitable distribution. The issue now, quite separately, is whether one party has a need for alimony and whether the other party has the ability to pay alimony. See Moreno v. Moreno, 24 Va.App. 190, 480 S.E.2d 792, 797 (1997) ("[S]pousal support and equitable distribution of property are two distinct concepts. The nonpensioned spouse is not claiming rights as a co-owner in the distributed property, but is instead simply asserting that the pension should not be ignored when gauging the financial position of the two parties for purposes of awarding alimony.") (quoting "Double Dipping," 7 Equitable Distribution J. 73 (1990)). As one commentator has noted:
The receipt of pension benefits is always an important factor in determining whether alimony should be paid and how much either spouse should receive. Any source of income is material to such a determination. This is true whether the jurisdiction treats pensions as marital property and, indeed, was equally true in the now defunct common-law system that did not provide any marital property distribution at divorce.
Grace Ganz Blumberg, Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis, 33 UCLA L.Rev. 1250, 1264 n. 60 (1986); see also 2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States, § 17.5, at 259 (2d ed. 1987) ("The first step in reaching a judgment about [a party's] ability to pay alimony is a determination of how much property and income he possesses. If there has been a division of property in the divorce, the share of property awarded to him is of course to be considered.").
The American Law Institute's Principles of the Law of Family Dissolution takes the position that "[s]pousal income from marital property allocated at dissolution *394 between the spouses should not be considered. To consider it invites double counting that will yield anomalous distinctions between equivalent cases." American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations, § 5.04, cmt. f (2002). The Principles, however, adopt a loss-based, rather than a need-based, approach to alimony. See § 5.02 cmt. a. This is an important distinction because, as the Reporter's Notes recognize, the double-counting concern is "unfounded" in a need-based alimony scheme:
Under existing law, cases divide on the question of whether income from marital property should be considered available for alimony claims. The issue typically arises when the court has divided a pension earned by Spouse A, and is then later asked to include Spouse A's share of the pension income in deciding whether A should make alimony payments to Spouse B....
Under prevailing law in which alimony is largely need-based, the double-dipping concern is unfounded. The potential obligor's income from allocated marital property is appropriately considered because the potential obligee's income from that property is considered as well. Typically, this is implicit: All the resources of both of them are taken into account in evaluating the obligee's needs and the obligor's capacity to respond to those needs.
American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations, § 5.04, reporter's notes, cmt. f.
In a need-based alimony scheme, such as Florida's, the "double-counting" problem, properly understood, arises in only very limited circumstances. As Professor Blumberg has noted,
[e]rroneous "double-counting" only occurs where the actual division of the pension, or other marital asset, is postponed and will be made only if and when benefits are paid out. Then each spouse is, properly speaking, an owner of a portion of those benefits and it would be incorrect to attribute the whole to either spouse for alimony determination purposes. When, however, all marital property division is effected at divorce and one spouse is awarded the entire pension, it is not in any way improper to consider the pension benefits as entirely his income for purposes of alimony determination.
Grace Ganz Blumberg, Intangible Assets: Recognition and Valuation, in 2 Valuation and Distribution of Marital Property, § 23.02[3][c], at 23-19 (1999).
A number of courts in other jurisdictions have recognized the logic of Professor Blumberg's position and similarly have rejected "double-dipping" arguments. See In re Marriage of White, 192 Cal.App.3d 1022, 237 Cal.Rptr. 764, 767-68 (1987); Krafick v. Krafick, 234 Conn. 783, 663 A.2d 365, 375-76 n. 26 (1995) ("We reject the defendant's contention that to consider vested benefits for purposes of equitable distribution and also, as allocated, as a source of alimony constitutes impermissible `double dipping.' ... Relying on the pension benefits allocated to the employee spouse under [the equitable distribution statute] as a source of alimony would be improper only to the extent that any portion of the pension assigned to the nonemployee spouse was counted in determining the employee spouse's resources for purposes of alimony."); Riley v. Riley, 82 Md.App. 400, 571 A.2d 1261, 1264 (Ct. Spec.App. 1990) ("It is true, of course, that, in awarding and setting the terms of alimony, the court cannot properly consider as a resource of the payor spouse property or income that the spouse does not *395 have. Thus, if the court removes an asset or source of income from the payor spouse through a monetary award (or otherwise), it cannot premise an alimony award on the assumption that that asset or source of income is still available to the payor. But we see no reason why it cannot base such an award on assets or sources of income that have not been taken from the payor and that do remain available. That does not constitute double dipping...."); Moreno, 480 S.E.2d at 799 ("[W]e hold that the income received by the husband from his share of the distribution of his pension is a fungible asset that may be considered as a resource when determining the amount of his spousal support obligation.").
Simply stated, despite the dissent's criticism of so-called "double-dipping," the cases and commentary discussed above make clear that Florida's statutory scheme is not based on "faulty reasoning and superficial logic," nor has it "total[ly] destr[oyed]" the "concept of equitable distribution." Whether or not the policy is wise is a question left to the Legislature. The majority has properly applied the statutory scheme, and I fully concur in its opinion.
CANTERO, J., concurs.
LEWIS, J., dissenting.
The majority opinion, the specially concurring opinion, and that of the Third District below present a myopic view of the fundamental principles and issue addressed and resolved in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986), almost two decades ago, and the principles which have naturally and correctly developed over that span of time. Today, this Court with faulty reasoning and superficial logic, substantially and erroneously impacts and very seriously alters the stability of a multitude of contractual marital agreements and marital judgments entered in good faith based upon the uniformly recognized principles established in Diffenderfer and applied in its progeny over the past twenty years here and in the district courts of appeal.
The fundamental issue is not simply the superficial and ever present issue of "need" or "ability to pay." The misstatement of the fundamental issue in dispute produces the incorrect result and a failure to understand or address that upon and after distribution, if the property initially distributed as and in the form of equitable distribution property is later taken back and given to the other party (double-dipping) there has been no equitable distribution of assets at all.
After today, no asset or property distribution is final because the property or asset distribution can be altered upon a theory of "need" and "ability to pay." The law as stated in Diffenderfer and as interpreted by all Florida appellate decisions during the last two decades is contrary to the majority and concurring opinions and compels a contrary result. It is most interesting that a subsequent decision of this Court following Diffenderfer and two decades of leading appellate decisions are now relegated to a category and conclusion that all appellate judges in Florida have simply repeatedly and uniformly engaged in a "mistaken reading" of the law.
The decision today fails to accommodate those marital agreements entered into in good faith during the last twenty years based upon the law as stated by all Florida courts (which are now merely labeled a "mistaken reading"), and the final judgments predicated upon this "mistaken reading" of the law. If this Court is determined to reject and reverse twenty years of Florida jurisprudence it certainly may do so, but it should do so prospectively and not use the guise of "mistaken reading" or *396 interpretation to so drastically impact twenty years of existing agreements and judgments and thereby generate a basis for an unknown number of modifications. To change the law is one thing, but to do so under a protective cloak of correcting two decades of "mistaken reading" is far different.
Initially, the Third District fell victim to incorrectly elevating an apparent single typographical error in one sentence into a total transformation of an entire fundamental body of law upon which material economic decisions in marital disputes have been predicated for years. The lower court next improperly blended its fundamental error with inapplicable statutory provisions to justify an erroneous result which further misdirected Florida law in a very substantial manner. This Court falls victim to and even magnifies the same errors by not only adopting the incorrect decision below, but also proceeding to interpret a marital agreement entered into under the then existing law as though Diffenderfer and its progeny never existed at the time the parties entered into the contract in 1993. This Court applies this new, different, and previously nonexistent erroneous interpretation of Diffenderfer to negate the 1993 marital agreement which was clearly drafted based on the principles discussed in Diffenderfer. The Court today accomplishes the total destruction of the foundation of the principles upon which the concept of equitable distribution of property has been based with regard to the type of asset which generates the disputed issue here.
In my view, the issue before the Court, namely whether a party's remaining asset which has been previously specifically valued and utilized as a property asset for the purpose of shifting and the equalization of property by equitable distribution may again be utilized as a fund to be taken as alimony, in a later post-dissolution proceeding, is controlled by this Court's almost two-decade old precedent of Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), and our subsequent decision in Pastore v. Pastore, 497 So.2d 635 (Fla.1986). In Diffenderfer, this Court clearly held that an asset which has been valued to include the value of future distributions for property distribution, such as a pension plan, may be considered marital property for the purpose of equalizing and distributing assets for equitable distribution of property purposes or as an asset source for payment for alimony, but not both. See Diffenderfer, 491 So.2d at 267. Diffenderfer has remained the controlling law on this question for almost twenty years, has been consistently applied correctly by this Court and all district courts of appeal that have ever considered the issue until now, and, in my view, has not been superseded by subsequent legislation. The majority has simply elected to ignore this long-standing body of law, the equitable foundation of equitable distribution of property and instead mandated an inequitable and unconscionable result. Therefore, I must dissent.
Mr. Acker, the former husband, properly argues that the trial court's decision to consider the income he receives from his pension in determining his alimony payments conflicts with this Court's holding in Diffenderfer. The majority rejects Mr. Acker's argument with an absence of sound logic. Moreover, the majority expressly approves the Third District's erroneous treatment of Diffenderfer in its opinion in Acker v. Acker, 821 So.2d 1088 (Fla. 3d DCA 2002). See majority op. at 389. All seem to also ignore that within months of Diffenderfer, this Court again addressed the controlling issue in Pastore. Referring to and quoting from Diffenderfer, this Court, in Pastore, again recognized and stated the general principle that: *397 in most cases ... it may be preferable to deal with pension rights as a marital asset rather than merely a source of support obligations....
Pastore, 497 So.2d at 637 (quoting Diffenderfer, 491 So.2d at 268) (emphasis supplied). Following this Court's decisions in Diffenderfer and Pastore, the Second, Fourth, and Fifth Districts all correctly interpreted Diffenderfer and held that an asset may not be counted twice, both during the equitable distribution of marital property as property and again as income for alimony purposes. See Rogers v. Rogers, 746 So.2d 1176, 1179-80 (Fla. 2d DCA 1999); Paris v. Paris, 707 So.2d 889, 890 (Fla. 5th DCA 1998); Ellis v. Ellis, 699 So.2d 280, 283 (Fla. 5th DCA 1997); Bain v. Bain, 687 So.2d 79, 81 (Fla. 5th DCA 1997); Gentile v. Gentile, 565 So.2d 820, 822-23 (Fla. 4th DCA 1990). In Acker, the Third District has mistakenly attempted to explain the decisions of the Second, Fourth, and Fifth Districts by suggesting that the original Westlaw and CD-Rom versions of the Diffenderfer opinion contained a typographical error, and, therefore, speculating that the decisions rendered by the Second, Fourth, and Fifth Districts were all a direct result of reliance upon the typographical error in Diffenderfer without any basis whatsoever for such faulty conclusion. See Acker, 821 So.2d at 1090-91. The Acker court below held, without explanation, that based upon the authoritative version of Diffenderfer, "a court is allowed to consider a pension which has been equitably distributed to the payor in determining the payor's ability to pay alimony." Id. at 1091. The majority here simply regurgitates the Third District's erroneous view of the application of Diffenderfer.
The Third District's explanation for the decisions of the Second, Fourth, and Fifth Districts which interpreted Diffenderfer is, however, clearly misdirected. A review of Rogers, Paris, Ellis, Bain, and Gentile reveals that there is absolutely no indication whatsoever that any of those courts relied upon the asserted typographical error in Diffenderfer first published by Westlaw and on CD-Rom. In fact, of those five decisions, three did not quote directly from Diffenderfer at all, see Rogers, 746 So.2d at 1179; Paris, 707 So.2d at 890; Gentile, 565 So.2d at 822-23, while two quoted from the correct, authoritative version, see Ellis, 699 So.2d at 283; Bain, 687 So.2d at 81. The Third District here has attempted to create confusion in Diffenderfer where none exists. In Diffenderfer, this Court clearly held that "injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations." Diffenderfer, 491 So.2d at 267. The subsequent decisions of the Second, Fourth, and Fifth Districts all properly interpreted the clear mandate of Diffenderfer, which the majority now rejects even though the citizens of Florida, their counsel, and Florida courts have relied thereon for almost twenty years.
Moreover, the Third District, in Acker, asserted that its discussion of Diffenderfer was merely "academic" because the Legislature subsequently enacted sections 61.075(8) and 61.08(2) of the Florida Statutes in 1988, which effectively superseded this Court's Diffenderfer holding. See Acker, 821 So.2d at 1091-92. The majority here approves the Third District's application of sections 61.075(8) and 61.08(2). See majority op. at 389. However, as recognized by Judge Gersten in his dissent in Acker below, with which I totally agree, Florida's equitable distribution statute (section 61.075) and alimony statute (section 61.08) do not at all conflict with this Court's Diffenderfer holding. See Acker, 821 So.2d at 1094-95 (Gersten, J., dissenting). Judge Gersten noted in his dissent *398 that "[c]onsiderations in the initial dissolution proceedings are distinct from those raised in a post-dissolution scenario." Id. at 1095. While sections 61.075 and 61.08 pertain to initial dissolution proceedings, here we are faced with a post-dissolution action. Sections 61.075 and 61.08 are not controlling here and the generalizations contained therein do not even attempt to address the specific true issue with which we are confronted in this case. The statutory provisions do not address the issue of the distribution of assets, including the value of a stream of future payments, as property to fund and accomplish equitable distribution and then later in subsequent proceedings utilization of the same asset again as one from which to distribute a flow of continuing payments to a party who has already received the value of such payments in the prior property distribution allocations. The fundamental dynamics and rights change after the classification and distribution of an asset as property and a division based on such classification.
In the initial proceeding, the assets were equalized and distributed with the former husband receiving his pension plan with its future distributions valued as an asset in the equitable distribution of property while the wife received other valuable assets to offset and place the total assets of each party in an equalized position. To now take that property asset previously classified as and subject to property distribution for valuation purposes for alimony payments violates the fundamental principles of equitable property distribution and fairness and constitutes a clear "double-dipping" of assetsa result this Court sought to avoid in Diffenderfer. Certainly, when the specific asset was originally assigned as property with value to Mr. Acker, the value recognized and received enhancement because it would eventually produce a future stream of income, and it was valued accordingly as a total property. Similarly, the former wife was assigned the marital residence asset, and additional other assets valued and equalized accordingly of significantly higher value than if the stream of payments had not been included in the value as property for the husband. The former wife has no additional alimony entitlement to the current value of the former husband's asset distributed and valued as property, just as the former husband has no entitlement to the current value of the assets distributed as property to the wife. The majority's holding encourages a dissipation of assets previously used for property distribution and permits a second redistribution of an asset already distributed as property in the initial process.
In an initial dissolution proceeding, a court begins the equitable distribution of property with the "premise that the distribution should be equal." § 61.075(1), Fla. Stat. (2003). Upon the distribution of assets as property in the final dissolution proceeding, the parties become independent of each other, and are entitled to the use of their equitably distributed property assets distributed for that purpose without interference from their former spouse. If one spouse dissipates the value of a distributed asset or a spouse's distributed property asset does not proportionately increase, that spouse is not entitled to a subsequent redistribution of the property following the initial finalized equitable property distribution. Former marital assets equitably distributed as property are not subject to redistribution a second time due to later values attributed to the asset used to equitably distribute property. Similarly, principles of fundamental fairness support the notion that spouses should not be entitled to a modification following the finalized equitable distribution as a result of the increase or decrease *399 in value of an asset equitably distributed as property to the other former spouse. The majority here ignores this principle. Here, the majority essentially authorizes a second redistribution of the former husband's pension planalready distributed to him as property in the initial dissolution action with an equal value of assets distributed as property to the wife and subtracted from other marital assetsbecause the pension plan increased in value following the final dissolution.
Reference is made to decisions and statutes from other jurisdictions which are invoked to allegedly support the majority position. Interestingly, a review of such material actually undermines the majority view. First, reference to legislation in New Jersey and Innes v. Innes, 117 N.J. 496, 569 A.2d 770 (1990), simply reveals that the substance of the applicable statutory provision there is exactly the law of Florida as established and announced some twenty years ago in Diffenderfer and uniformly applied by all district courts of appeal which has not been legislatively altered in Florida. Second, Krafick v. Krafick, 234 Conn. 783, 663 A.2d 365 (1995), does not support the majority and outlines methods of addressing pension matters in domestic litigation. Importantly, the Krafick court recognized and outlined the "present value" or "offset" method of distributing such assets as property, which is recognized in Florida in Diffenderfer, as opposed to a continuing revenue source for alimony payments. The Krafick court also noted an important difference between distributions in the form of property and those of continuing payments when it stated:
It must be kept in mind, however, that awards of property and of alimony are different in quality and consequence for the recipient. Periodic alimony, unlike a property award, is subject to modification on a number of grounds.
Id. at 374 n. 25 (emphasis supplied). The Connecticut court concluded the "offset" discussion by recognizing:
The offset method has the advantage of effecting a "clean break" between the parties. See Kikkert v. Kikkert[, 177 N.J. Super. 471, 427 A.2d 76 (1981)]. ("Although fixing present value under such circumstances may be difficult and inexact, nevertheless immediate final resolution of the method of distribution is to be encouraged, preferably by voluntary agreement whenever possible. Long term and deferred sharing of financial interests are obviously too susceptible to continued strife and hostility, circumstances which our courts traditionally strive to avoid to the greatest extent possible."). It also avoids extended supervision and enforcement by the courts.
Id. at 374 (citations omitted).
For two decades, this Court and the district courts of appeal have recognized that the majority's result here is inequitable. An injustice is occurring here as the former husband's pension plan is being distributed twicefirst in the initial distribution as property (with the wife receiving a larger offset share of property) and now in a subsequent post-dissolution proceeding concerning income or alimony. I would continue to adhere to this Court's precedent in Diffenderfer and Pastore and that from other district courts of appeal, and hold that the former husband's pension plan, distributed to him as part of the initial equitable distribution of property, may not now, in a post-dissolution proceeding, be considered as a source for the payment of alimony to be redistributed to the former wife. Under these circumstances, the wife has previously received the full offset value of the asset in the *400 form of additional property assets at the time the marriage was dissolved.
In Diffenderfer, the Court recognized the difference and the use of asset distribution as property rather than the designation of an asset as a source for continuing payments as a method "by which the marriage could be truly ended rather than prolonged through financial dependence ad infinitum." Diffenderfer, 491 So.2d at 266 (quoting Diffenderfer v. Diffenderfer, 456 So.2d 1214, 1219 (Fla. 1st DCA 1984)). It also recognized the use of assigning a pension plan as an asset in a "scheme of property distribution" rather than extending the connection of the parties by considering a stream of payments as income to connect the parties forever. Id. at 267 (emphasis supplied). The Diffenderfer court recognized that alternatively a pension asset may be considered as a source of periodic alimony; the court immediately noted, however, that
[o]bviously, ... injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations.
Id. If the pension asset had not been distributed as property and considered here only as a source of proceeds, and had the wife not received additional or enhanced property as the corresponding property "offset," I would agree with the majority.
I respectfully dissent and agree with the well-reasoned view expressed by Judge Gersten below. The majority today has, however, created a principle of law in domestic litigation that an asset distributed as property is subject to redistribution post-judgment upon a "need" and "ability to pay" analysis notwithstanding its character, valuation and distribution as property in the initial distribution, a principle previously contrary to a well-developed body of Florida law. The asset here was valued, characterized and distributed as property in the original proceeding rendering it separate property which is now subject to redistribution.
NOTES
[1] Section 61.075, Florida Statutes (1993), provided in pertinent part:

(1) In a proceeding for dissolution of marriage ... the court shall set apart to each spouse that spouse's nonmarital assets and liabilities, and in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors....
....
(5) As used in this section:
(a) "Marital assets and liabilities" include:
....
4. All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans, and programs....
....
(6) The date for determining marital assets and liabilities and the value of such assets and the amount of such liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by agreement, or the date of the filing of a petition for dissolution of marriage, unless the trial judge determines another date is just and equitable under the circumstances.
....
(8) The court may provide for equitable distribution of the marital assets and liabilities without regard to alimony for either party. After the determination of an equitable distribution of the marital assets and liabilities, the court shall consider whether a judgment for alimony shall be made.
[2] Section 61.08, Florida Statutes (1993), provided in pertinent part:

(1) In a proceeding for dissolution of marriage, the court may grant alimony to either party which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payments or payments in lump sum or both....
(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
....
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
....
(g) All sources of income available to either party.
[3] See Dissenting opinion at 396 ("In Diffenderfer, this Court clearly held that an asset which has been valued to include the value of future distributions, such as a pension plan, may be considered marital property for the purpose of equalizing and distributing assets for equitable distribution purposes or as an asset source for payment for alimony, but not both."); see also, e.g., Rogers v. Rogers, 746 So.2d 1176, 1179 (Fla. 2d DCA 1999) ("In [Diffenderfer], the supreme court held that a pension could be treated as an asset for equitable distribution or as income available to determine a spouse's ability to pay alimony, but not both."); Gentile v. Gentile, 565 So.2d 820, 822-23 (Fla. 4th DCA 1990) ("[I]n [Diffenderfer], the supreme court held that a pension... may be considered as a source of marital property subject to equitable distribution or as a source of payment of alimony but not as both.").
[4] The fact that this is a post-dissolution modification proceeding does not affect the application of section 61.08(2). The party seeking to modify the alimony award, of course, must meet the prerequisites to modification articulated in Pimm v. Pimm, 601 So.2d 534 (Fla. 1992). In this case, that burden would fall on Mr. Acker. But if the court finds that the prerequisites are met, the court must then determine to what extent the alimony award should be increased or decreased. This determination must be made in accordance with section 61.08(2). Section 61.14 itself provides no criteria on which to make such a determination except to provide that "the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties." § 61.14(1)(a), Fla. Stat. (2003).