636 So.2d 53 (1994)
Stephen W. BOYNTON, Appellant,
v.
Geneva C. BOYNTON, Appellee.
No. 93-00587.
District Court of Appeal of Florida, Second District.
March 2, 1994.
Order Granting Clarification and Denying Rehearing April 22, 1994.
Elizabeth S. Wheeler, Berg & Wheeler, P.A., Brandon, for appellant.
Edna Elliott, J.D., P.A., Tampa, for appellee.
PARKER, Judge.
Stephen W. Boynton appeals the trial court's final judgment of dissolution, challenging the equitable distribution of marital property and the establishment of permanent alimony for Geneva C. Boynton.[1] We reverse the trial court's denial of the husband's request for partition of the marital home and direct the trial court to recalculate permanent alimony.
*54 These parties were married in 1963 and separated in 1984. There are no minor children. The husband filed for dissolution of the marriage in 1992. Both parties are in good health. At the time of the final hearing, the wife was fifty-four years old and the husband's age was fifty-six. The wife has a high school education, and the husband has had one year of college. The wife served primarily as the homemaker and mother while the children remained in the home.
Following the parties' separation, the wife has worked periodically as a perfume model, sales clerk, and interior decorator, earning between $4.50 and $10.00 per hour. At the time of the final hearing, she was employed part-time (thirty-four hours per month) at a dress shop earning $6 per hour. The wife's financial affidavit reflects that her monthly clothing expenses exceed the amount that she earns from part-time employment. Although apparently qualified, the wife has chosen not to pursue full-time work as sales clerk in a department store because she "hated being closed in." The wife testified that she planned to submit employment applications to some retail shops once she had returned from a vacation with her daughter and mother.
The husband, a licensed real estate broker and a licensed contractor, serves as president and sole employee of his wholly-owned corporation which provides services to third parties in the areas of real estate construction, development, and brokerage. From 1988 to 1992 the corporation provided marketing services at a housing community being developed as a joint venture in Naples, Florida. Neither the husband nor his corporation has any ownership interest in the joint venture. He has never drawn a traditional salary from his corporation. He testified that he took money from the corporation when there was money available. In 1992 the husband received notification that his contract with the joint venture would be terminated within sixty days and that the remaining residential lots in the Naples development would be auctioned. This change has caused the husband to no longer have the use of a rent-free apartment. After termination, the husband has remained working at the same location using his corporation in an entrepreneurial capacity to construct homes for persons who had purchased lots. At the time of the final hearing, the corporation had contracted to build three houses. The husband testified that he intended to complete the houses and thereafter look for future business opportunities. The husband estimated that his new business endeavor would reduce his income to $2500 per month. He based this figure on the estimated profit on the three houses under construction and his anticipated commission from the auction of the lots.
The husband acknowledged that his corporation received $374,549.51 during its four-year association with the joint venture. From the time of the separation through April 1992, the husband had voluntarily paid the wife temporary support of between $2850 and $3150 per month. With that support, the wife's part-time employment, some financial assistance from her mother, and rental payment that the wife received monthly on a cottage located adjacent to the marital home, the wife has remained in the marital home and paid the mortgage payments, all household expenses, and provided for her personal expenses.
The parties agree that the marital home in Tampa, Florida, is worth $250,000. It has a first and second mortgage totaling $125,962. The home contains mostly antique furniture which the wife has collected over the years. The trial court valued the marital home furnishings at $36,685.
The wife presented two expert witnesses to establish an imputed income for the husband. A certified public accountant (CPA) calculated the husband's available income during a twenty-three-month period in 1990 and 1991 and concluded that the husband's available income in 1990 was $97,334 and in 1991 was $113,328. The husband challenged these figures as inaccurate, claiming that they failed to account for business expenses. The wife's second expert witness was a career and vocational counselor who assessed the husband's job qualifications and available income and testified that the husband's job skills were readily transferable to occupations with an earning potential of $50,000. The witness acknowledged that he had found *55 no specific job opening for the husband and that the husband's age could be viewed negatively by some potential employers.
The husband's CPA testified that the husband has not filed a personal or corporate federal income tax return since 1981. The CPA testified that tax liability, without consideration of interest or penalties, is approximately $37,491. The wife has refused to participate in a joint return and testified that the husband should be responsible for these taxes. The husband also participated in the settlement of a lawsuit from a previous business venture which resulted in a 1992 judgment in the amount of $22,967 against his corporation and him individually. In addition, he has business debts totaling $35,600.
In its amended final judgment, the trial court, citing Klein v. Klein, 122 So.2d 205 (Fla. 3d DCA 1960), imputed a net income to the husband of $5,761.50 per month based on the husband's previous record of voluntary support and the wife's CPA's evaluation. The trial court further found that the wife's gross monthly income was $595 based on part-time work and rental payments from the cottage. The trial court awarded the wife permanent periodic alimony of $2500 per month plus the husband's share of the rental income from the cottage. The trial court also awarded the wife the exclusive use of the marital home, which would terminate upon the husband's sixty-fifth birthday or the wife's remarriage, at which time the home would be sold.[2] During her occupancy, the wife would be responsible for the mortgages, taxes, and insurance. Upon sale of the home and payment of closing costs, the trial court ordered that the wife will recoup from the husband's marital share one-half of all sums advanced by the wife for expenses, mortgage payments, taxes, insurance, and nonroutine maintenance and repair. The trial court awarded the wife the furniture in the residence and split the remaining marital debts between the parties, with the husband responsible for debts related to his business ventures ($60,600), and the wife responsible for debts that she had incurred ($56,847). There was no mention in the final judgment of the federal tax liability. The trial court also ordered the husband to pay $4,824.72 in temporary alimony for his failure to pay temporary alimony for the period of May through July 1992.[3]
We conclude that the trial court erred in the award of exclusive possession of the marital residence and the imputation of income. First, the husband's petition for partition of the marital residence should have been granted. A grant of exclusive possession of property to one of the parties in a final judgment in a dissolution proceeding must serve a special purpose. Duncan v. Duncan, 379 So.2d 949 (Fla. 1980). As noted in Duncan, the critical question is whether the award is equitable and just given the nature of the case. We conclude that the award to the wife of the exclusive possession of the marital home for nine years was an abuse of discretion when viewed in light of the age of the parties, the fact that there are no children left in the home, their considerable debts, and their incomes at the time of final hearing. The circumstances mandate a partition sale of the marital home. That sale should generate approximately $50,000 for each party to apply to the purchase of a residence commensurate with that person's needs.
Next, we conclude that the trial court erred in imputing to the husband the net monthly income figure of $5,761.50. A court may impute income to a spouse who is earning less than the spouse is capable of earning through his best efforts. As this court stated in Greene v. Greene, 547 So.2d 1302 (Fla. 2d DCA 1989):
This determination of earning capacity versus actual earnings assumes that the party to which income is to be imputed has chosen to earn less and has the ability to remedy the situation... . The appellant was involuntarily terminated from his employment *56 for no fault of his own. The record reflects that he sought reemployment without success. The imputing of income based on the present record was therefore error.
The record is clear that the appellee is in need of continuing support. The employment applications submitted by the appellant reflect that appellant has been seeking employment comparable to his prior employment but do not establish that he is unemployable in some lesser capacity. Under such circumstances, the lower court may consider the actual earning capacity of a party even though such earnings are less than equal to his capabilities. Brotman v. Brotman, 528 So.2d 550 (Fla. 4th DCA 1988).
Greene, 547 So.2d at 1303.
The trial court based the imputation of income on the husband's record of temporary support and the wife's expert's evaluation of the husband's earnings from January 1990 through November 1991. The evidence, however, is uncontroverted that the husband's occupational circumstances changed involuntarily beginning June 1, 1992. Thus, his earnings and voluntary support payments prior to June 1992 are not relevant to his current employment situation. If the trial court found the husband's testimony that he would earn $2500 monthly not credible, then there was the wife's vocational expert witness's testimony that the husband was capable of earning $50,000 per year. If the trial court deems that imputation of income to the husband is appropriate, absent other competent evidence, the trial court should consider the vocational expert's testimony.
The trial court's reliance on Klein is misplaced. In Klein, the husband had for eight years filed income tax returns showing an annual income of $3000 while the evidence reflected that annual expenditures of the married couple exceeded $8000. The Klein court stated:
Where the head of a family by supplying money over a period of years, establishes and maintains a standard of living on a certain financial level, it may be inferred, in the absence of a sufficient showing to the contrary, that he has a source of income or financial status sufficient to enable him to continue to maintain his spouse in substantially the same manner of living.
Klein, 122 So.2d at 207 (emphasis added). In this case, there was uncontroverted evidence that the husband's source of income or financial status will not continue at the same level as established in 1990 and 1991. Although we agree that the wife is entitled to permanent alimony, we conclude that the trial court incorrectly calculated the income imputed to the husband. Because the marital home will be sold now, the trial court also will need to factor into the alimony award the wife's loss of rental income awarded to the wife in the form of support.
We reverse and remand this case to the trial court with directions to order a partition sale of the marital residence and to award the wife permanent alimony in an amount which takes into account the incomes of the husband and wife and the ability of each party to generate more income by use of his or her best efforts.
Reversed and remanded.
THREADGILL, A.C.J., and BLUE, J., concur.

ORDER
The appellee's motion for clarification is granted as follows:
The trial court is not permitted to reopen the evidence. The award of permanent alimony must be based on the evidence presented at the final hearing. This, however, is without prejudice to a party to file a petition for modification if there has been a substantial change in circumstances. The parties then could present evidence of actual earnings at the hearing on the petition for modification.
The appellee's motion for rehearing is denied.
NOTES
[1] Geneva C. Boynton filed a cross appeal. We find no merit to the two issues she raised.
[2] The court entered an amended order on motions for rehearing which provided that the wife's exclusive use of the marital home also would terminate upon her death.
[3] We know of no authority to order payment of arrearages for failure to continue voluntary payments being made by a spouse during a separation. No party, however, has raised this issue in this appeal.