953 So.2d 23 (2007)
James T. MARSHALL, Appellant/Cross-Appellee,
v.
Betty Lou MARSHALL, Appellee/Cross-Appellant.
No. 5D06-967.
District Court of Appeal of Florida, Fifth District.
March 9, 2007.
Rehearing Denied April 3, 2007.
*25 Elise A. Singer, Melbourne, for Appellant/Cross Appellee.
Judith E. Atkin, Melbourne, for Appellee/Cross-Appellant.
ORFINGER, J.
James T. Marshall (the "former husband") appeals a final judgment dissolving his marriage to Betty Lou Marshall (the "former wife"). The former husband contends that the trial court erred in awarding $1 and exclusive use and possession of the marital home as permanent alimony to the former wife. Further, he claims that although the court found that he was totally disabled and relies on his retirement pay as his sole income, it ordered that he pay the former wife one-half of his retirement income, awarded his one-half share of the former wife's 401k account as lump sum alimony, and required him to maintain a life insurance policy, which named his adult children as beneficiaries. Because there is no trial transcript, our review is limited to errors that may appear on the face of the amended final judgment. See Mayfield v. Mayfield, 929 So.2d 671, 672 (Fla. 5th DCA 2006). In the absence of an adequate transcript on appeal, a judgment that is not fundamentally erroneous must be affirmed. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979).[1]
A trial court has considerable discretion in determining an award of alimony. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Ondrejack v. Ondrejack, 839 So.2d 867 (Fla. 4th DCA 2003). Permanent alimony is appropriate where the requesting spouse cannot support herself in accordance with the lifestyle of the marriage. See Bucknam v. Shelton, 849 So.2d 1204, 1206 (Fla. 5th DCA 2003). However, before a court can determine the proper amount of an award of alimony, the court must first determine the actual need and the ability to pay. Beck v. Beck, 852 So.2d 934 (Fla. 2d DCA 2003).
Based on the facts found by the trial court, we conclude that the court did not abuse its discretion in its award of $1 *26 permanent periodic alimony to the former wife. This amount accommodated the former husband's claim of disability at the time of trial but leaves open the possibility of increasing the former wife's alimony in the event that the former husband's ability to pay changes. See Ellis v. Ellis, 699 So.2d 280 (Fla. 5th DCA 1997) (affirming nominal award of alimony), disapproved on other grounds by Acker v. Acker, 904 So.2d 384 (Fla.2005).
In addition, as permanent alimony, the court granted the former wife exclusive possession of the marital home, formerly held as tenants by the entirety, until her death or remarriage. This was error. In Duncan v. Duncan, 379 So.2d 949, 952 (Fla.1980), the supreme court held that an award of exclusive possession of the marital home is proper where such award is directly connected to the obligation to pay support or is temporarily necessary to prevent reduction in the value of the subject property. However, the grant of exclusive possession of the marital home must serve some "special purpose." The critical question is whether the award is equitable and just given the nature of the cause. Id.; Arze v. Sadough-Arze, 789 So.2d 1141 (Fla. 4th DCA 2001); Todd v. Todd, 734 So.2d 537 (Fla. 1st DCA 1999).
Here, the parties have no minor children. The parties' incomes are relatively the same, and, thus, there is no great disparity in the financial circumstances of the parties. The former husband is disabled while the former wife is able bodied, has stable income and ready employability, and they have very few assets. It appears that the effect of awarding the marital home to the former wife until her death or remarriage was to force the husband from his modest economic status to a state of relative impoverishment. Based on these facts, this Court cannot sustain the trial court's award of exclusive possession of the home to the former wife until her death or remarriage. These circumstances mandate a partition sale of the marital home. See Boynton v. Boynton, 636 So.2d 53, 55 (Fla. 2d DCA 1994).
Moreover, as the former husband points out, the parties entered into a temporary property/asset settlement agreement, which was approved by the trial court. In that agreement, the parties agreed that "they [would] sell the home and divide the profits from the sale equally." Yet, in its final judgment, the court awarded the former wife exclusive use and possession of the marital home until she dies or remarries, contrary to the terms of the agreement. The trial court offered no reason for its failure to observe the parties' agreement regarding the marital home. Moreover, no request to set aside the agreement appears in the record, and the court failed to address the impact of the agreement in the final judgment.
Lastly, the trial court erred in distributing the marital assets unequally, ultimately favoring the former wife. Section 61.075(1), Florida Statutes (2006), requires the trial court to distribute marital assets and liabilities between the parties beginning with the premise that an equal distribution should occur. However, where a justification is shown, a trial court may make an unequal distribution. In making an unequal distribution "a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be `shortchanged.'" Canakaris, 382 So.2d at 1204.
Under the trial court's equitable distribution scheme, the former wife was awarded a majority of the assets. Yet, *27 apart from finding that the former wife was living at poverty level (an interesting finding in light of its later finding that the former wife had given the parties' adult daughter $13,800 in marital funds without the former husband's knowledge), the final judgment fails to identify that factor, or any other factor as a justification for an unequal distribution. A court must provide a legally sufficient factual basis for its unequal distribution of marital assets. Carr v. Carr, 779 So.2d 311, 312 (Fla. 2d DCA 1999); Harreld v. Harreld, 682 So.2d 635, 636 (Fla. 2d DCA 1996). We conclude that the trial court erred by awarding the former wife her entire 401k account as lump sum alimony, exclusive possession of the marital home until her death or remarriage as permanent alimony, and one-half of the former husband's retirement income as well as survivor benefits, without making a specific findings of fact to justify the unequal distribution.
The parties were married for thirty-seven years and their children were adults at the time of the dissolution. The former wife has a net monthly income of $1,247 and a 401K plan, which had a present market value of $6,968.85. The former husband earns $2,459 per month, gross, from his civil service retirement pension. The trial court awarded the former wife one-half of this pension.[2] Based on this distribution, the former wife's monthly income is $2,476.50, while the former husband has a $1,229.50 gross income per month on which to live.[3] The former husband's income does not include his obligation to pay one-half of the marital home's expenses while the former wife resides there. The former wife was also given the former husband's one-half interest in her 401k plan and exclusive possession of the marital home (valued at $208,000 with a $15,450 mortgage) until her death or remarriage.
"[W]here the husband's income is nearly exhausted on obligations imposed by the final judgment, leaving him with practically no money to support himself, reasonable persons could not differ as to the impropriety of the actions taken by the trial court." Gentile v. Gentile, 565 So.2d 820, 822 (Fla. 4th DCA 1990), disapproved on other grounds by Acker. The cumulative effect of the equitable distribution plan renders the trial court's judgment an abuse of discretion. See, e.g., Radziwon v. Radziwon, 710 So.2d 748, 748-49 (Fla. 4th DCA 1998) (holding that trial court abused its discretion where former husband was left with only $709 per month to support himself after paying alimony while former wife would have $2,128.85 available for her needs).[4]
*28 The final judgment of dissolution is reversed in part and affirmed in part. Specifically, we affirm the $1 permanent alimony award and the dissolution of the parties' marriage, but reverse the remainder of the final judgment.
REVERSED IN PART; AFFIRMED IN PART AND REMANDED.
LAWSON and EVANDER, JJ., concur.
NOTES
[1] It appears that that former husband attempted to reconstruct the record as allowed by Florida Rule of Appellate Procedure 9.200(b)(4). However, the former wife objected to the proposed statement of facts. The trial court was unable to settle and approve a statement of the evidence.
[2] In her Answer Brief, the former wife claims that by stipulation of the parties, the trial court divided the former husband's civil service retirement benefits. Thus, she contends that he cannot now complain about that distribution. A review of the record does not support this contention. The Temporary Property/Asset Settlement Agreement provides that the intangible assets, including the pension plans, would be decided by the court or the parties and their attorneys. The former wife's second amended pretrial statement, which was filed two days before the final hearing, stated that one of the issues involved the intangible assets and requested that the former husband's civil service retirement benefits be divided retroactively to the date of filing with the former wife receiving survivor benefits.
[3] From the former husband's financial affidavit, it appears that his net monthly income is $1,734.87. (The 2004 retirement benefits booklet calculates his net income as $1,802.27). Thus, based on the court's distribution plan he would be required to live off of $867.43, while the former's wife monthly net income would be $2,114.43.
[4] The trial court also erred in requiring that the former husband keep his adult children as the beneficiaries under his life insurance policy. Absent a written agreement, a court has no jurisdiction to render orders requiring a parent to name adult children as the beneficiaries of life insurance policies. Instead, a parent can only be required to maintain life insurance on his own life for the benefit of his minor children. Eagan v. Eagan, 392 So.2d 988, 989-90 (Fla. 5th DCA 1981); Bosem v. Bosem, 279 So.2d 863, 865-66 (Fla.1973).