PER CURIAM.
Gregory Olsen [“Former Husband”] appeals an alimony modification order because it reduced his alimony obligation after his retirement from $450 to $200 rather than eliminating it. At the time of the March 2006 hearing, the Former Husband was 67 and Patricia Olsen [“Former Wife”] was 65. They were married in May 1974 and separated in December 1989. The court had entered a final judgment of dissolution in December 1996. In it, the court had found the Former Husband was a real estate broker in good health and the Former Wife was a former sales clerk who would have difficulty working due to various ailments. The court equitably distributed more than $800,000 of property, including their home, real property in North Carolina, mortgages, stocks, and investment accounts. The court found that both parties were capable of employment, but his earning capacity exceeded hers; accordingly, the court ordered him to pay permanent periodic alimony of $450 monthly. This court affirmed the alimony and equitable distribution portions of the final judgment. Olsen v. Olsen, 709 So.2d 614 (Fla. 5th DCA 1998).
In 2002, the Former Wife filed motions for contempt and enforcement, which resulted in an order finding the Former Husband to be delinquent and in contempt. They settled the arrearages through March 2004, but Former Husband continued to refuse to pay alimony.
In March 2004, the Former Husband filed a supplemental petition to modify final judgment. In the Former Wife’s June 2004 financial affidavit, which the court relied on subsequently at trial, she alleged a monthly gross income of $2,204.40, monthly expenses totaling $2,803.70, assets of $650,170.94, and liabilities of $4,822.26.
The modification hearing did not occur until March 2006. The Former Wife testified that she was receiving $442 monthly through social security and working full-time as a hotel desk clerk for $8.50 per hour-whieh was $1 more hourly than calculated in her 2004 affidavit. She believed there was no income change because she had to drive an additional nine miles to and from work each day. She claimed monthly living expenses of $2,813. She testified that she no longer had a car payment.
*800 The Former Wife receives money regularly from annuities that she purchased with her equitable distribution. The monthly withdrawals vary from $1,004 to $1,056. Even though she had to withdraw more than she intended as a result of the Former Husband’s chronic non-payment of alimony, she testified that the value of the annuities grew from the end of 2002 to the end of 2003, and- was sure they had increased further. At trial, she acknowledged about $305,000 in liquid assets.
Former Wife testified to multiple health issues: gallbladder surgery in 2004; two knee surgeries, the latest of which was in October 2005; significant treatments for back problems, a cane and back brace to assist her in walking, and irritable bowel syndrome.
The Former Husband testified that he earned no salary since 1999 due to poor health. He discussed back problems leading to and continuing after his 2003 surgery. He had prescriptions for hypertension, prostate problems, and back relaxant or pain medicines. He married real estate broker, Carol Melanson, in November 2001, and they filed joint returns from 2001 through 2004. Melanson generally paid for everything. As to work, the Former Husband explained that his real estate license expired in 2005, was renewed, but was inactive at the time of trial. In 2005, his license was registered with a Century 21 company that Melanson owned and for which the Former Husband was once the president, but he claimed he had sold no real estate since 1999. He used to have a cubicle at the office, where he went once or twice each week until he retired. He considered his retirement to be partly voluntary and partly medical.
Though the Former Husband claimed no substantial assets,-there was considerable doubt about several properties he claimed not to own. He and his wife owned several properties jointly, which he had not listed on his affidavit because they were encumbered by mortgages and “probably” made no income. He conceded he might have eo-owned some real estate, but had not put it on his affidavit because he did not feel like the owner. He knew nothing about the properties because they were his wife’s business, and they never really talked about it. He obtained a mortgage loan on a commercial building in 1999 that he conveyed to Melanson and himself in 2003. There were other complexes or properties in which his name appeared as co-owner or co-signer, but he testified he knew little about them.
By the court’s calculation of the Former Wife’s income and expenses, the Former Wife faced a monthly deficit of $521.53. Due to her age and health issues, the court found there may be some time where she will be unable to work. The court found that the Former Husband’s retirement and proposed termination of the $450 alimony “may place the Former Wife in peril of poverty in the short and long term.” See Pimm v. Pimm, 601 So.2d 534 (Fla.1992). In Pimm, the court explained that:
Even at the age of sixty-five or later, a payor spouse should not be permitted to unilaterally choose voluntary retirement if this choice places the receiving spouse in peril of poverty.
Id. at 537.
Therefore, the court did not eliminate alimony but reduced it to $200.
It does appear from the judgment that the trial court may have miscalculated the Former Wife’s expenses. The transcript and record show that, working from the Former Wife’s 2004 affidavit and 2006 testimony, the court did not deduct the $98.42 for long-term health care and a $340 car payment that the Former Wife no longer paid. Those adjustments, if not offset, *801 would reduce the Former Wife’s monthly deficit significantly and might well affect the trial court’s conclusion that Former Wife would experience poverty in the short term. Also, the findings concerning Former Wife’s income and rate of depletion of her annuities appears inconsistent. Accordingly, we reverse and remand to the trial court to redetermine Former Wife’s income and expenses and to reconsider the reduction or elimination of alimony.[1]
REVERSED and REMANDED.
PALMER, C.J., GRIFFIN and SAWAYA, JJ., concur.

. If the court concludes that Former Wife is not currently in peril of poverty, a reduction of alimony to a nominal amount may be an option. See, e.g., Fleck v. Fleck, 958 So.2d 1043 (Fla. 2d DCA 2007); Marshall v. Marshall, 953 So.2d 23 (Fla. 5th DCA 2007).